LASSER, P. J. T. C.
Taxpayer Monmouth Airlines, Inc., a New Jersey corporation, contests the imposition of the New Jersey Sales and Use Tax (N.J.S.A. 54:32B 1 et seq.) on the purchase and rental of certain aircraft and the purchase of aircraft parts and equipment in the years 1969, 1970 and 1972 through 1976. During those years taxpayer operated a commuter airline. Its home base was at Monmouth Airport in Wall Township, Monmouth County. Flights were made to other states by small commuter-type aircraft. Taxpayer also chartered aircraft. Some charters were for intrastate flights but most were for flights to other states. The taxpayer also operated a flight school at Monmouth Airport and repaired and maintained its own aircraft at the Monmouth Airport location. The general manager of the taxpayer corporation testified that about 55-60% of the revenue of the corporation was derived from commuter air service. Of the balance, about 25% was derived from postal service contracts, about 15% from the flight school and approximately 5% from aircraft charters. The commuter aircraft were purchased out of state and ferried from the factory to Monmouth Airport by employees of the taxpayer. Maintenance checks and crew training were performed there before the aircraft were put into service. Ninety-eight percent of the repair or replacement parts for the aircraft were brought to Monmouth Airport and installed there by taxpayer.
I
Taxpayer contends that the tax on purchases and rentals of aircraft and aircraft parts, accessories and equipment is an invalid burden of interstate commerce. The Commerce Clause of the Federal Constitution prohibits the state imposition of a tax which constitutes a direct and immediate burden on interstate *50 commerce. However, state taxation upon interstate commerce is permitted if it operates to exact “from interstate commerce its fair share of the cost of state government.” Washington Rev. Dept. v. Stevedoring Ass’n, 435 U.S. 734, 748, 98 S.Ct. 1388, 1398, 55 L.Ed.2d 682 (1978).
In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 287-288, 97 S.Ct. 1076, 1079, 1083, 51 L.Ed.2d 326 (1977), the Supreme Court held that a state tax is not an unconstitutional burden upon interstate commerce if (1) there is sufficient nexus with the state to justify the tax, (2) the tax is fairly related to the benefits provided by the state to the taxpayer, (3) the tax does not discriminate against interstate commerce and (4) the tax is fairly apportioned to local activities.
The court finds that the taxpayer maintained its home base in New Jersey. The court also finds that the aircraft in question were purchased out of the State of New Jersey and brought by the taxpayer’s personnel to taxpayer’s home base within the State, where they remained for a period of time for maintenance and training and then were utilized for commuter airline, charter and flight school purposes. The court further finds that these aircraft were principally, but not exclusively, used in interstate commerce, that parts and equipment were purchased both out-of-state and within state for use at the home base for repair and replacement purposes and that equipment was also so purchased for maintenance and training purposes at the home base.
The New Jersey Sales and Use Tax Act, as it is applied to the taxpayer, meets the four-part test enunciated in Complete Auto Transit, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326.
First, Monmouth Airport is taxpayer’s home base. Its maintenance facilities, reservation center and administrative offices are located there. This home base provides a substantial nexus with New Jersey, sufficient to meet the requirements of the nexus test.
Second, the imposition of the tax is not unreasonably related to the benefits of government generally provided to taxpayer *51 and all other taxpayers in the state. It has been held that a sales or use tax based upon a reasonable percentage of the sale price is not unreasonably related to the benefits provided by the state. Washington Rev. Dept., 435 U.S. at 737-748, 98 S.Ct. at 1392-1398.
Third, the New Jersey Sales and Use Tax applies to those who engage in intrastate as well as interstate commerce. N.J.S.A. 54:32B-1 et seq. Thus, the tax does not discriminate against corporations engaged in interstate commerce.
The fourth requirement is fair apportionment to local activities. The purpose of this test is to avoid multiple taxation of a transaction by the several states. There has been no showing in this case that the taxpayer has been subjected to double or multiple taxation. In fact, taxpayer concedes that it has paid no sales or use taxes on the property subject to this assessment to any other jurisdiction.
The court concludes that the imposition of the sales and use tax on the purchase and rental of aircraft, aircraft parts, accessories and equipment meets the four-part test enunciated in Complete Auto Transit and is not an invalid imposition upon interstate commerce.
II
Taxpayer contends that, if it is the only airline operating in New Jersey required to pay a sales or use tax on the purchase or use of aircraft or aircraft parts or equipment, such imposition of the tax would be invalid and violative of the equal protection requirements of the United States and New Jersey Constitutions. U.S.Const., Amend. XIV; N.J.Const. (1947), Art. 1, para. 1 and 5.
Taxpayer concedes that it has no evidence that it has been singled out for audit or enforcement of this tax. It seeks to satisfy itself that the enforcement of the tax by the Division of Taxation does not violate equal protection guarantees. It contends that it cannot determine its rights, or present evidence of a denial of these rights if such exist, without being permitted discovery of the contents of the tax returns of seven other *52 airlines and the audit of these returns by the Division of Taxation. The court limited discovery to a general statement of enforcement policy with respect to the airline industry and refused to order more detailed discovery of specific tax returns and audits of other airlines. The court’s action was based upon the statutory protection of the confidentiality of the records and files of the Director of Taxation. N.J.S.A. 54:50-8(a). This statute provides:
The records and files of the commissioner respecting the administration of this subtitle or of any State tax law shall be considered confidential and privileged and neither the commissioner nor any employee engaged in the administration thereof or charged with the custody of any such records or files, nor any former officer or employee, nor any person who may have secured information therefrom under subdivisions “d”, “e”, “f”, or “g” of section 54:50-9 of this Title or any other provision of State law, shall divulge or disclose any information obtained from the said records or files or from any examinations or inspection of the premises or property of any person. Neither the commissioner nor any employee engaged in such administration or charged with the custody of any such records or files shall be required to produce any of them for the inspection of any person or for use in any action or proceeding except when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this subtitle or of the State tax law affected, or where the determination of the action or proceeding will affect the validity or amount of the claim of the State under some State tax law, or in any lawful proceeding for the investigation and prosecution of any violation of the criminal provisions of this subtitle or of any State tax law.
Taxpayer asserts that the court, in its discretion, can order disclosure of tax records. Plaintiff relies on Lakewood Trust Co. v. Fidelity and Deposit Co., 81 N.J.Super. 329, 195 A.2d 503 (Law Div.1963). In Lakewood defendant sought to examine certain records made under the direction of the Bureau of Banking of the New Jersey Department of Banking and Insurance. The confidentiality of these records was protected by N.J.S.A. 17:9A-264. This statute specifically permitted the release of these records by court order if the records were material and relevant to the issues in the proceedings and the ends of justice and public advantage would be served.
The court in Lakewood permitted inspection of the records after a finding that the statutory test for release had been met. The instant case deals with tax records, not bank records. N.J.S.A. 54:50-8 does not provide for a judicial determination of *53 the right to inspect tax records. Lakewood is readily distinguishable. Taxpayer’s reliance on it is not persuasive.
Taxpayer contends that the facts in the instant case fall within the statutory exception. N.J.S.A. 54:50.....8a states that disclosure is not permitted:
.. . except when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this subtitle or of the state tax affected, or where the determination of the action or proceeding will affect the validity or amount of the claim of the State under some State tax law ....
Since NJ.S.A. 54:50-8 has not been judicially interpreted, an examination of the interpretation of a similar statute in New York is helpful. In re Lichtenstein Estate, 52 N.J. 553, 247 A.2d 320 (1968).
In the case of In re Manufacturers Trust Co. Application, 269 App.Div. 108, 53 N.Y.S.2d 923 (App.Div.1945), plaintiff alleged that a franchise tax levied upon it was assessed at a higher rate than that levied upon others. To establish its contention it requested the Tax Commission to introduce into evidence franchise tax returns filed by 49 similarly situated corporations for the year 1930. The relevant statute in Manufacturers was Article 9, § 202, of the New York Tax Law pertaining to franchise taxes on insurance companies and business corporations. The portions of that statute relevant to the instant case state:
The officers charged with the custody of such reports shall not be required to produce any of them or evidence of anything contained in them in any action or proceeding in any court, except on behalf of the state or the tax commission in an action or proceeding under the provisions of this chapter . . to which the state or the tax commission is a party ... to any action or proceeding under the provisions of this article when the reports or facts shown thereby are directly involved in such action or proceeding. ..
[emphasis supplied].
The relevant language of NJ.S.A. 54:50-8 is strikingly similar. The court in Manufacturers refused to order the release of the requested tax return files reasoning that
This act constitutes the state’s compact and pledge to the taxpayer that his tax return shall be kept inviolate, confidential and privileged, and not disclosed to anyone, nor in any manner, except as specifically authorized by the act itself, and will be used only for the purposes specifically provided. [269 App.Div. at 114, 53 N.Y.S.2d at 929.]
*54 The emphasized language in the New York statute was interpreted to encompass release of the taxpayer’s own records involved in the proceeding, not the records of others subject to the same tax. Subsequent New York cases reiterate this point. See N. Y. State Dep’t of Tax & Finance v. N. Y. State Dep’t of Law, etc., 44 N.Y.2d 575, 378 N.E.2d 110, 406 N.Y.S.2d 747 (Ct.App.1978) (court refused to order compliance with a subpoena requesting release of tax information); People v. Wedelstaedt, 77 N.Y.Misc.2d 918, 356 N.Y.S.2d 411 (Sup. Ct.1974) (court refused to order release of sales tax records of party subject to criminal investigation).
In Manufacturers the court noted:
.. . the object of the secrecy provisions is to assure every taxpayer making returns that the information therein contained will remain confidential and will be used only for the purpose of computing his tax. The statute indicates a legislative determination that such returns shall not be used as evidence in the ordinary case and shall not, without the taxpayer’s consent be employed for any purpose other than that stated in the statute. [269 App.Div. at 113, 53 N. Y.S.2d at 928; emphasis supplied]
The same policy consideration enunciated in Manufacturers applies to N.J.S.A. 54:50-8. The exception language of N.J.S.A. 54:50-8 was used deliberately by the Legislature. The Legislature has provided a limited exception to the statute and the court cannot interfere with the judgment of the Legislature by broadening the exception. The court finds the interpretation of this language by the New York courts persuasive and finds that to comply with taxpayer’s request for the records of other airlines would be violative of the statute. We hold that the court has no discretion to breach the confidentiality of tax records protected by the statute. In strictly limiting access to tax records the court is mindful not only of the administrative necessity of protecting such records to promote our system of voluntary reporting, but also of the growth of legal protection of the right of privacy. Initially discussed generally in an article in the Harvard Law Review by Samuel D. Warren and Louis D. Brandéis, The Right to Privacy, 4 Harv.L.Rev. 193 (1890), the right of privacy with respect to tax records in governmental possession was dealt with at the federal level in *55 the Tax Reform Act of 1976 with the amendment of I.R.C. § 6103. This amendment of the code changed the status of tax returns from public records to confidential records available to other governmental agencies only on a limited basis. The change in treatment was referred to in the general explanation of the Act which stated:
The Congress strove to balance the particular office or agency’s need for the information involved with the citizen’s right to privacy and the related impact of the disclosure upon the continuation of compliance with our country’s voluntary tax assessment system. [Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act, 314-315 (Comm.Print 1976).]
Taxpayer contends that, if it could prove that it is the only scheduled airline taxed on the sale or use of its aircraft, aircraft parts and equipment, such selective enforcement of the sales and use tax would be an unconstitutional denial of equal protection. Selective enforcement is not by itself a constitutional violation of equal protection. It must be shown that the selection is based upon an arbitrary classification. Taxpayer has failed to meet this burden of proof.
Furthermore, taxpayer relies upon N.J.Const. (1947), Art. VIII, § 1, par. 1, which provides that “property shall be assessed for taxation under general laws and by uniform rules.” This requirement applies to local property taxes, not excise taxes. Foosaner v. Taxation Div. Director Div., 58 N.J. 57, 62, 275 A.2d 129 (1971). Plaintiff’s claim for relief based on selective enforcement and violation of constitutional equal protection is denied.
Ill
Taxpayer contends that sales tax should not have been assessed against rentals paid by it under leases for two aircraft leased from Wall Herald Corp. It contends that the leases were part of a financing transaction, the aircraft being held by Wall Herald as security. N.J.S.A. 54:32B-2(e)(3)(G) provides that the sale of tangible personal property is exempt from sales tax *56 where “the purpose of the vendee is to hold the thing transferred as security for the performance of an obligation of the vendor.”
Taxpayer’s general manager testified that in 1972 taxpayer encountered economic difficulties and needed additional capital. It was unable to borrow from a bank and sold one of its aircraft in 1972 and a second aircraft in 1976 to procure the necessary capital, leasing back the aircraft so as not to lose its use. Taxpayer and Wall Herald entered into two simple four-sentence lease purchase agreements, one dated December 28, 1972 for a Piper PA-31 Navajo Aircraft # N87MA and one dated May 14, 1976 for a Beechcraft B-99 Aircraft # N983MA.
The Piper was purchased for $72,000 and leased back to taxpayer at a rental of $1,800 a month for 60 months. The lease was net with all expenses to be borne by taxpayer. At the end of the lease ownership was to revert to the taxpayer. The instrument stated, “The purpose of this transaction is to protect Wall Herald Corp. while acting as guarantor of the aircraft financing.” The agreements contained no other terms. Wall Herald Corp., using its credit, borrowed the $72,000 and turned it over to taxpayer in exchange for the transfer of ownership of the aircraft. The total rental payments of $108,000 over the 60-month period repaid Wall Herald’s loan of $72,000 plus interest. The 1976 transaction involved the same transactional facts except for a purchase price of $225,000 and rental of $5,000 a month for 60 months, or a total rental of $300,000.
The general manager, a signatory to the lease purchase agreement, testified that there were no other financing documents executed by taxpayer. He further testified that during the course of the lease Wall Herald Corp. sold both aircraft, terminated the lease and retained the sale proceeds. He did not know the amount received by Wall Herald on the sale, but stated that taxpayer was not entitled to a return of any rentals paid.
The Director regarded the two sales to Wall Herald as nontaxable sales for resale, the lease back being regarded as the resale. The Sales Act includes a lease in its definition of sale. *57 N.J.S.A. 54:32B 2(f). The Director determined the lease to be a taxable sale and imposed the tax upon the rentals as paid.
The transaction on its face appears to be a financing transaction with the aircraft held as collateral for the repayment of the sums advanced, together with interest. The need for financing, the making of the lease purchase agreements and the wording indicating the purpose of the transaction are in evidence and uncontroverted. However, there is no evidence as to the manner in which the title was transferred or how the parties treated the transaction for federal income tax purposes. Did the taxpayer regard the transaction as a completed sale, report a gain or loss on the sale and deduct rental payments, or did it ignore the sale and treat the transaction as a financing transaction, not a sale, and continue to take depreciation on the aircraft? The federal test for distinguishing between a completed sale and a sale only for financing purposes is based not upon the form of the transaction but upon the objective economic realities and the intent of the parties. Frank Lyon Co. v. U. S., 435 U.S., 561, 573, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978); Helvering v. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226 (1939). The factors to be considered are the terms of the lease, the rental paid, options to renew or repurchase and the surrounding circumstances.
Based upon the ultimate disposition of the aircraft by Wall Herald free of any reverter to taxpayer and without repayment to taxpayer of any equity created by rental payments, the court finds that the parties regarded the transaction as a completed sale and not a financing transaction. The transaction did not have the formalism usually associated with arms-length financing transactions and ultimately its terms were disregarded by the parties. Taxpayer cannot now claim exemption as a security transaction when the parties treated the transaction as a completed sale.
Viewing the entire transaction, I find that the aircraft were sold by taxpayer and leased back but Wall Herald exercised dominion over the aircraft, free of the reverter provision *58 and not subject to the limitations that would be imposed upon a lender holding collateral. The exemption must be strictly construed. Mal Bros. Contracting Co. v. Taxation Div. Director, 124 N.J.Super. 55, 61, 304 A.2d 750 (App.Div.) certif. den. 63 N.J. 554, 310 A.2d 469 (1973); Container Ring Co., Inc. v. Taxation Div. Director, Division of Tax. 1 N.J.Tax 203, 208 (1980).
The court holds that the transaction is not entitled to the security exemption from sales tax.
IV
Taxpayer contends that the exemptions found in the New Jersey Sales and Use Tax under N.J.S.A. 54:32B-8(bb) and (cc), which exempt from tax retail sales on railroad rolling stock and sales of buses for public passenger transportation, apply by implication to aircraft used as common carriers.
The taxpayer’s argument is seriously undermined by the principle that statutes granting exemptions are strictly construed to limit exemptions. Mal Bros. Contracting Co., 124 N.J.Super. 55, 61, 304 A.2d 750 (App.Div.) certif. den. 63 N.J. 554, 310 A.2d 469 (1973); Container Ring Co., 1 N.J.Tax 203, 208 (1980). The wording of the statute with respect to the exemption for railroad rolling stock and buses is clear and unambiguous. Applying the strict construction of exemption statutes rule and examining the clarity of the statute in issue, the court finds no basis for extending the statutory exemptions contained in N.J.S.A. 54:32B-8(bb) and (cc) as contended by the taxpayer. In 1966 when the Sale Tax Act was enacted, the Legislature was well aware of the existence of airline carriers and could have specifically exempted sales of aircraft if they had intended to do so.
Recently, the Legislature has enacted N.J.S.A. 54:32B-8.-35 (L.1980, c. 98 enacted September 4, 1980, effective January 1, 1979) which exempts the sale and repair of certain aircraft replacement parts, machinery and equipment from the sales and use tax. From the amendment of the Sales Tax Act we may presume an intent on the part of the Legislature to change the *59 existing law. The amendment confirms the prior intent of the statute not to exempt such sales. Essex Cty. Retail Liquor Stores Ass’n v. Municipal Board of Alcoholic Beverage Control of Newark, 77 N.J.Super. 70, 78, 185 A.2d 404 (App.Div.1962); 1A Sutherland, Statutory Construction (4th ed. 1972) § 22.30 at 178.
During the course of the hearing taxpayer referred to a statement in the State Tax News, 4 New Jersey State Tax News 110 (1975), entitled “Renting & Leasing of Aircraft.” This statement concerns non taxability of aircraft purchased exclusively for resale or rental if a Resale Certificate is issued. Charges for repairs and parts were also stated to be non taxable when made to an aircraft acquired exclusively for resale or rental if a Resale Certificate is issued. There is no evidence in the record that the aircraft purchases and parts and equipment purchases found taxable by the Director of Taxation are non taxable under the provision referred to in State Tax News.
The Clerk of the Tax Court is directed to enter judgment affirming the determination of the Director of the Division of Taxation.