OPINION OF THE COURT
John Copertino, J.
The question under consideration in these matters is whether a financial statement submitted to a public board operating under a mandate of confidentiality, is subject to a subpoena duces tecum by a Grand Jury.
Suffolk County Local Law 12-1978 requires all elected county officials, department heads, chief deputies and all exempt personnel graded 32 and above to submit a financial statement to the Board of Public Disclosure (referred to hereinafter as the Board), delineating their business and financial interests. The consequence of failure to file a financial statement is suspension of pay and possible dismissal from public employment. (See Suffolk County Local Law 12-1978, § 10, subd [a].)
*596 Under force of law, these financial statements are accorded confidentiality absent a waiver by the public employee or a majority vote of the Board authorizing disclosure. This law prescribes specific guidelines for the Board to follow to facilitate a disclosure where a conflict of interest or other impropriety is deemed to exist. If, “in the sole opinion of the majority of the entire membership of the Board” a conflict warrants a public disclosure “only relevant portions of the financial statement shall be made public” (Suffolk County Local Law 12-1978, §6, subd [d]). Moreover, prior to any public disclosure, the Board must state its findings of fact and conclusions in a written opinion which shall be made available to the affected employee. The employee then has an opportunity for a hearing to refute the opinion of the Board. The document may not be disclosed in any other way other than through this procedure or by the employee’s voluntary waiver. In fact, any person, including a Board member, who discloses information contained in the financial statement, except as authorized by the law, is subject to a fine and imprisonment or either.
“Defendant” — as the movant Lou V. Tempera refers to himself in his motion papers — filed a financial statement with the Board in accordance with the law. From the time of filing to this date, “defendant” has not waived his entitlement to confidentiality. Further, the Board has not authorized public disclosure of the document.
The People have served a subpoena duces tecum on the Board for production of “defendant’s” financial statement. “Defendant” and the County of Suffolk — on behalf of the Board — move in separate motions pursuant to CPLR 2304 for an order quashing the subpoena duces tecum. The People oppose these motions.
A Grand Jury, as a general rule, has a right to evidence to assist it in its duties. Exceptions warrant close scrutiny. In the words of Wigmore: “When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule” (8 Wigmore, *597 Evidence [McNaughton rev, 1961], §2192). The United States Supreme Court has often iterated the ancient maxim of law that “‘the public *** has a right to every man’s evidence,’ except for those persons protected by a constitutional, common-law, or statutory privilege, United States v. Bryan, 339 U. S. at 331; Blackmer v. United States, 284 U. S. 421, 438” (Branzburg v Hayes, 408 US 665, 688). Such a privilege must be found in this case, if the movants are to be successful.
The movants independently seek to quash the subpoena on several grounds. First, the Board and “defendant” urge that a subpoena requiring production of the records of the Board would violate “defendant’s” privilege against self incrimination as contained in the Fifth Amendment to the United States Constitution. Second, “defendant” claims that compliance with the subpoena would abridge his Fourth Amendment right to privacy. Third, “defendant” alleges that the subpoena is unlawful because it would be utilized “to prepare an already pending indictment for trial.” Last, the Board asserts that compliance would “violate the legislative mandate of confidentiality and the specific prohibition against disclosure as required by Suffolk County Local Law 12-1978.”
The first argument raised on these motions is that a subpoena of the “defendant’s” financial disclosure statement, would be violative of his Fifth Amendment privilege against self incrimination. While this argument is not dispositive of the issue raised by this motion, it is being considered inasmuch as both the Board and “defendant” have raised it and inasmuch as this argument is often raised where Grand Jury subpoenas are involved. The Fifth Amendment, which protects individuals involved in State judicial proceedings (Molloy v Hogan, 378 US 1) as well as Grand Jury investigations (Counselman v Hitchcock, 142 US 547), provides that no person “shall be compelled in any criminal case to be a witness against himself”.
The focus of any Fifth Amendment analysis begins with whether the accused is being compelled to testify “against himself”. In the present case, the compulsion has been directed solely toward the Board. It is not “defendant” who *598 has been asked to relinquish his financial statement. Accordingly, this matter is governed by the long-established principle that “[a] party is privileged from producing the evidence but not from its production” (Johnson v United States, 228 US 457, 458). Thus, the privilege set forth in the self incrimination clause “adheres basically to the person, not to information that may incriminate him” (Couch v United States, 409 US 322, 328; see, also, Fisher v United States, 425 US 391; Andresen v Maryland, 427 US 463; California Bankers Assn. v Shultz, 416 US 21). The Board’s production of the financial statement submitted by “defendant” would not “compel” “defendant” to do anything which would incriminate himself. Nor would it require “defendant” to be a “witness” against himself. In such case “the ingredient of personal compulsion against an accused is lacking” (Couch v United States, supra, p 329).
In determining whether this ingredient of personal compulsion exists, the Supreme Court has stated that “actual possession of documents bears the most significant relationship to Fifth Amendment protections against governmental compulsions” (Couch v United States, supra, p 333). However, the court went on to say that actual possession is not always a necessary element. “[Situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact” (Couch v United States, supra, p 333).
In the present situation, “defendant’s” submission of the financial statement to the Board was neither temporary nor insignificant. The statement became a record of the Board which could not be retrieved by “defendant”. Under these circumstances, constructive possession simply does not exist. Therefore, personal compulsion is not present in this case, and “defendant’s” contention that production of the statement by the Board would violate his Fifth Amendment privilege against self incrimination is without merit.
In connection with the Board’s argument that compliance with the subpoena would be violative of “defendant’s” right against self incrimination, it should be noted that the Supreme Court has held that the privilege against self *599 incrimination “was never intended to permit [a person] to plead the fact that some third person might be incriminated by his testimony *** [t]he Amendment is limited to a person who shall be compelled in any criminal case to be a witness against himself” (Hale v Henkel, 201 US 43, 69-70; emphasis in original). Indeed, “[i]t is extortion of information from the accused himself that offends our sense of justice” (Couch v United States, supra, p 328). Because a defendant incriminated by evidence produced by a third party suffers no breach of his Fifth Amendment rights (Johnson v United States, 228 US 457, supra; Couch v United States, 409 US 322, supra; Andresen v Maryland, 427 US 463, supra; Fisher v United States, 425 US 391, supra; California Bankers Assn. v Shultz, 416 US 21, supra), the Board’s opposition to the subpoena on the grounds that it offends “defendant’s” privilege against self incrimination must fall.
“Defendant” also moves to quash the subpoena herein on the ground that it would violate his Fourth Amendment protections against unreasonable searches and seizures.
In certain situations, a subpoena duces tecum can constitute an unreasonable search and seizure (Boyd v United States, 116 US 616, 622). A subpoena is compulsory in nature and, as such, may be equated with other compulsory production orders, such as warrants, which are more frequently identified with Fourth Amendment violations. Implicit in this argument is that compulsory production by subpoena is disclosure in violation of the Fourth Amendment despite the fact that production is required before a Grand Jury only. The Supreme Court has so held that the right of privacy protected by the Fourth Amendment is applicable to such compulsory process which intrudes into a person’s zone of privacy (United States v Miller, 425 US 435). Compulsion alone, however, is not enough to invoke the constitutional protection. Compulsory production must violate a protectable privacy right to be within the spirit and meaning of the amendment (see Boyd v United States, supra; United States v Miller, supra, p 443).
In determining what constitutes a Fourth Amendment privacy right, the United States Supreme Court has held that “‘no interest legitimately protected by the Fourth *600 Amendment’ is implicated by governmental investigative activities unless there is an intrusion into a zone of privacy, into ‘the security a man relies upon when he places himself or his property within a constitutionally protected area.’” (United States v Miller, 425 US 435, 440, supra, quoting Hoffa v United States, 385 US 293, 301-302). The Miller court (supra, p 442), in addressing the scope of this constitutionally protected area, noted that while “‘we have * * * departed from the narrow view’ that ‘property interests control the right of the Government to search and seize,’ ” a person may not claim Fourth Amendment protection for subjects that he “‘knowingly exposes to the public’ ” (425 US, supra, at p 442, quoting Katz v United States, 389 US 347, 351). Miller focused the constitutional analysis on the nature of the particular documents sought to be protected “in order to determine whether there is a legitimate ‘expectation of privacy’ concerning their contents.” (425 US, supra, at p 442.) It has been stated that in determining whether a legitimate expectation of privacy exists, “there is a twofold requirement, first, that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as ‘reasonable’ ” (Katz v United States, 389 US 347, 361, supra [concurring opn, Harlan, JJ).
The Miller court was confronted with the issue of whether a subpoena duces tecum served upon two banks, which sought checks and other bank records of petitioner, ran afoul of petitioner’s Fourth Amendment rights. The court concluded that there was no Fourth Amendment violation inasmuch as there was no legitimate expectation of privacy in these records. “The checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained [by the subpoena], including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business” (United States v Miller, 425 US, supra, at p 442).
In contrast, the present action involves a financial statement which “defendant” was required to produce and *601 which, by the terms of the local law requiring production, was to be “considered confidential and any disclosure * * * an unwarranted invasion of personal privacy.” (Suffolk County Local Law 12-1978.) In applying the first prong of the twofold test to the case at bar, it cannot be gainsaid that “defendant” relied on this legislative conferral of privacy when he disclosed his personal financial details to the Board. As “defendant” himself states, “Without the Board’s guarantee of secrecy, it is virtually beyond question that the Defendant would have declined to bare his and his wife’s personal finances in the manner requested.” This reliance on nondisclosure is nothing less than an expectation of privacy. However, in addition to determining the existence of an actual expectation of privacy, it must also be established that the expectation was reasonable.
What could be more reasonable than reliance on a legislative pronouncement? The language of the local law is clear — a reasonably prudent citizen, taking note of the nondisclosure provision, is left with no doubt as to its meaning. This law limits those who are entitled to view the financial statement as well as when and how a disclosure is authorized. Further, statements are procured for a limited purpose. Anything falling outside the scope of this stated purpose is confidential by the very wording of the law. In this perspective, the subpoena under consideration is inconsistent with the safeguards provided by the local law. In an ordered society, people look to the law — be it statutory or otherwise — for guidance. When an individual loses confidence and, in turn, respect for the law because of its dubious application, our system of justice is undermined. Clearly, “defendant’s” expectation of privacy was therefore reasonable.
Furthermore, this court does not overlook that the Supreme Court of the United States has held that a person having no proprietary interest in documents belonging to a third party cannot assert the Fourth Amendment to prevent their compelled production by the third party (see United States v Miller, 425 US 435, supra; California Bankers Assn. v Shultz, 416 US 21, supra; Donaldson v United States, 400 US 517). However, the ratio decidendi *602 underpinning these decisions is herein absent. The basis of these decisions is that a defendant can have no reasonable and legitimate expectation of privacy under the Fourth Amendment when he submits documents to a third party without an assurance of confidentiality. An examination of the facts of Miller, California Bankers and Donaldson reveals that the third party who was given the documents which were later subpoenaed was not legally bound to confidentiality and was free to disclose the contents to others. Such clearly is not the case here. Indeed, Miller suggests that had there been a reasonable basis for the third-party bank to resist the subpoena, there would have been a privacy right protected by the Fourth Amendment (see 425 US, supra, at p 443, n 4). In this court’s opinion, Local Law 12-1978 creates a reasonable expectation of privacy in the subpoenaed documents thereby placing them beyond reach of a subpoena duces tecum. If the nondisclosure provisions of the local law were not to be given such an interpretation, significant policy considerations underlying this law’s purpose would be frustrated.
These policy considerations are neither wholly unique nor unfamiliar. In Matter of New York State Dept. of Taxation & Fin. v New York State Dept. of Law, Statewide Organized Crime Task Force (58 AD2d 298, affd 44 NY2d 575), the Appellate Division reversed an order of the County. Court denying a motion to quash a subpoena duces tecum. In affirming the Appellate Division, the Court of Appeals held that the nondisclosure provisions of subdivision (e) of section 697 of the Tax Law required that the Department of Taxation and Finance refuse to comply with a Grand Jury subpoena duces tecum for production of an individual’s tax return. The court reasoned that statutes which proscribe the use of compulsorily reported information in a manner that might be harmful to the complying individual are intended to protect the privacy interests of the individual and to promote the government’s administrative goals by encouraging both candor and full compliance with laws governing the disclosure of information. These same considerations are plainly applicable to this case.
*603 It must be inferred that the county legislature inserted the nondisclosure provision in Local Law 12-1978 with the expectation that it would result in a more effective Board of Public Disclosure than would otherwise be the case. It appears that in the legislature’s opinion, candor in financial statements could be best achieved by insuring strict confidentiality. Also, the monitoring of conflicts of interest by the Board would be facilitated by encouraging officials to make full and truthful declarations in their financial statements “‘without fear that these statements will be revealed or used against him for other purposes’ (Webb v Standard Oil Co., 49 Cal 2d 509, 513)” Matter of New York State Dept. of Taxation & Fin. v New York State Dept. of Law, Statewide Organized Crime Task Force, 44 NY2d 575, 580, supra).
If the Legislature had intended that financial statements were to be available in judicial proceedings, it is certain that it would have explicitly excepted that from the nondisclosure provisions. Under the general rule of statutory construction — expressio unis est exclusio alterius — the express mention of certain specific exceptions to a statute’s general provisions excludes all other exceptions. (Gotkin v Miller, 379 F Supp 859, affd 514 F2d 125; Herzberg v Finch, 321 F Supp 1367.) The Suffolk County law now under consideration is explicit and specific in its articulation of when and how disclosure is authorized, as well as under what circumstances exceptions are to be made to the nondisclosure provisions. Plainly, had the county legislature intended that the Board’s records be subjected to court process, it would have so provided when it carefully delineated the exceptions to nondisclosure.
Inasmuch as the local law created an expectation of privacy in “defendants” financial statement which “defendant” relied upon and inasmuch as the local law created an expectation of privacy in regard to the document which was reasonable, the court concludes that there exists a protected privacy right under the Fourth Amendment’s proscriptions against unreasonable searches and seizures. Accordingly the subpoena must be quashed.
*604 Although, movants do not raise the following ground in the present motion, this court is of the opinion that there is a public interest privilege which also precludes production.
The nature of the public interest privilege was explained in People v Keating (286 App Div 150, 152-153) as follows: “In addition to the statutory, there is quite another kind of privilege recognized in the courts. This privilege attaches to confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged. (Matter of Egan, 205 N. Y. 147, 157; Lewis v. Roux Trucking Corp., 222 App. Div. 204; People ex rel. Heller v. Heller, 184 Misc. 75; 70 C.J., Witnesses, §§ 616-617; 8 Wigmore on Evidence [3d ed.], § 2367 et seq.) The invocation of this rule of nondisclosure requires that (1) the person in whom the confidence is placed be a public official; (2) that he be acting in the performance of his duties; and (3) the communication be in the public interest.”
The situation herein satisfies the requirements of this privilege. First, the Board of Public Disclosure is an official governmental agency created by the Suffolk County Legislature. Second, the procurement of “defendant’s” financial statement is within the scope of the Board’s duties. In fact, the very purpose of the Board is to obtain such documents in order that it may function as a public watchdog. Finally, as has been earlier discussed, the communication is in the public interest.
In Fischer v Citizens Committee (72 Misc 2d 595), a special commission investigating a prison uprising moved to quash a subpoena duces tecum requiring the commission to surrender the files and records of the commission to a Special Grand Jury. The court held that inasmuch as it was necessary for the commission to promise confidentiality to its witnesses in order to function, the public interest privilege prevented yielding the commission’s records to the Grand Jury. The court stressed that it recognized the existence of two competing public interests: “On the one hand there is the public interest in the Grand Jury’s exercise of its constitutional power to obtain all relevant evidence for the purpose of holding those responsible for *605 their criminal acts and, on the other hand, there is the public interest in the performance of the duties of the [commission]” (Fischer v Citizens Committee, supra, p 601). The Fischer court held (supra, p 602), however, that “to require disclosure would violate the integrity of the commission’s promise of confidentiality”, and thereby make it difficult or impossible to perform its important public function. Therefore, the scale was tipped in favor of nondisclosure.
Similarly, this court is faced with the prospect of balancing competing public interests. The court recognizes that the Board performs an important public watchdog service and that its ability to effectively fulfill its duties depends, in no small degree, upon its ability to promise that the sensitive financial data it acquires will remain confidential. In such a situation, the public interest in nondisclosure outweighs the public interest in aiding the Grand Jury investigation. Accordingly, this court is of the opinion that “defendant’s” financial disclosure statement is protected from a subpoena duces tecum by reason of the public interest privilege as well.
Because the court has quashed the subpoena herein for the above-stated reasons, it is unnecessary to reach “defendant’s” remaining contention.
It shall be noted that in a recent decision of the Nassau County Court, it was unsuccessfully argued that a section of the Public Housing Law providing for nondisclosure of information contained in housing applications precluded the Grand Jury from obtaining this information by subpoena (Matter of Housing Auth., 107 Misc 2d 1015). Therein, the court reasoned (supra, p 1017) that “[t]o permit tenants and prospective tenants to file applications and financial statements free from criminal investigation would contravene public policy and be detrimental to the public interest.” Further, the court stated that the law was intended to protect applicants from “public disclosure” not from disclosure before a Grand Jury, whose proceedings are secret.
This court is of the opinion that the above case is not dispositive of the present motion. In that case, the Grand *606 Jury was investigating the filing of false statements as a result of information supplied by the housing authority itself to the District Attorney. On that basis alone, disclosure was authorized inasmuch as the statute provided that there was to be no disclosure “unless the authority, municipality or successor in interest thereof is a party or complaining witness” (Public Housing Law, § 159). In the present motion, the Board is not the complaining witness. The District Attorney seeks the statement absent any claim or request by the Board that there exists any impropriety as to the statement itself. In fact, the Board vigorously opposes disclosure. In addition, as hereinabove stated, this court is of the opinion that “defendant’s” right of privacy precludes disclosure of privileged information to any third persons, including a Grand Jury.
Accordingly, the movants’ motions to quash the subpoena duces tecum served upon the Board of Public Disclosure for the “defendant’s” financial disclosure statement are granted.