**Edward ANGRISANI, Plaintiff,**

v.

**The CITY OF NEW YORK, et al., Defendants.**

**No. 85 CV 2317.**

United States District Court, E.D. New York.

July 18, 1986.

---

Philip J. Kaplan, Staten Island, N.Y., for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York, New York City by Jonathan L. Pines, Asst. Corp. Counsel, for City defendants.

Robert Abrams, Atty. Gen., State of New York, New York City by Robert J. Schack, Asst. Atty. Gen., for State defendants.

Griffin, Scully & Sevona, New York City by Peter J. Esposito, for defendant Catholic Guardian Soc.

## MEMORANDUM AND ORDER

PLATT, District Judge.

### INTRODUCTION

The plaintiff brings this action to redress the alleged deprivation of certain rights, privileges and immunities guaranteed to him by the First, Fifth and Fourteenth Amendments to the United States Constitution and statutorily secured by 42 U.S.C. § 1983, as well as by the laws of the State of New York.

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1343 and § 1331 as well as under the judicially articulated doctrine of pendent jurisdiction. *See United Mineworkers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Venue in the Eastern District of New York is proper because the claim arose within its borders. 28 U.S.C. § 1391(b) (1982).

### A. *Factual Background*

This action arises out of events which transpired two years ago at a group home for wayward boys operated by the Catholic Guardian Society ("CGS") at 311 Clawson Street in Staten Island, New York ("the Clawson Street Home"). The plaintiff, Edward Angrisani ("Angrisani"), was a group

home supervisor there from 1977 until June 1984. The Clawson Street Home was not only his place of employment, but was his residence and that of his wife and child.

Defendant CGS is a not-for-profit organization which operates a number of such group homes as a voluntary agency under contract with the City of New York. CGS receives City, State and Federal funding and is subject to the rules, regulations, recommendations and supervision of New York State's Department of Social Services which operates in New York City through the Human Resources Administration, Department of Social Services, Special Services for Children ("City DSS"). *See* Complt. at ¶ 9. At all relevant times defendant James P. O'Neil ("O'Neil") was the Chief Executive Officer of CGS and defendants Victor Bozzuffi ("Bozzuffi"), Dominic Cervino ("Cervino"), and Leonard Jackson ("Jackson") were employees.

On May 17, 1984 Bruce Garrett ("Garrett"), a juvenile resident of the Clawson Street Home with an alleged history of behavioral problems,[1] accused the plaintiff of striking him about the face and causing a bloody nose and superficial facial injuries. The youth's complaint was sent to the Confidential Investigation Unit ("CIU") of the City's Department of Social Services.

According to the plaintiff, Garrett made this and other false and defamatory accusations in retaliation for being referred out of the agency "because CGS had been able to do little for or with him," and upon the instigation of Cervino, a director of the Clawson Street Home. Cervino's culpable participation was purportedly attributable to his personal animosity towards Angrisani generated by Angrisani's criticism of his work. Complt. at ¶ 29.

The allegedly false report filed against the plaintiff triggered the operation of New York State Social Services Law § 422 ("§ 422"), which is designed to safeguard children from maltreatment and abuse. Any report of abuse or neglect committed by any person supervising children in facilities under City supervision are immediately relayed to the New York State Child Abuse and Maltreatment Register ("the State Register") for action under § 422. Upon receipt the State Register forwards reports involving acts in the City of New York to the CIU for investigation.

Section 422 of Title 6 of the Social Services Law provides for the recordation in the State Register of all "indicated" reports, so designated when an investigation produces some credible evidence of child abuse. Recordation occurs without a prior evidentiary hearing in order to alert prospective employers and others authorized by Title 6 that a charge has been filed against the subject.

Section 422 also provides that an indicated report may be expunged forthwith if further investigation reveals no credible evidence to support the report. N.Y. Soc. Serv. Law § 422(5) (McKinney's 1983). If a report is not expunged or if the State's Commissioner of Social Services fails to act affirmatively within 30 days of an expungement request, the subject is entitled to an evidentiary administrative hearing. No time limit has been set for such hearings, however, and pending such review the indicated report remains on file.

A subject is entitled to receive copies of all reports and relevant information on file with the State Register; however, "the commissioner is authorized to prohibit the release of data on file that would identify the person who made the report or who cooperated in a subsequent investigation,

---

**1.** Garrett, according to plaintiff, had a record which was well known to CGS of aggressive behavior, defiance of authority, lack of veracity, psychological problems, false accusations of abuse or maltreatment made by him against counselors or supervisors and antagonism toward plaintiff. Indeed, the final report issued by the State Special Hearing Bureau of May 28, 1985 corroborates these allegations. Director

John Wiley wrote: "if there is one point upon which all the parties have agreed (albeit at different stages of this proceeding), it is that Bruce Garrett is a liar. Both his social worker and his high school dean credibly testified that Bruce Garrett is a liar. Both his social worker and his high school dean credibly testified that Bruce had unsuccessfully tried to deceive them." Ex. H to City's Notice of Motion to Dismiss.

which he reasonably finds will be detrimental to the safety or interests of such persons." *Id.* at § 422(7).

Plaintiff claims that the City DSS issued a report on or about June 20, 1984 to the effect that the charge was "indicated" and that on or about June 22, 1984, a further unofficial report was issued containing additional allegations against Angrisani including the fact that he practiced or condoned the beating of youths under his supervision and then bribed them not to reveal such practices. Plaintiff claims that this report was based at least partially on false information supplied by Garrett and defendants Cervino, Jackson and/or Bozzuffi and was negligently or carelessly prepared.

This so-called "unofficial" report purportedly was forwarded to the State Register and CGS, and catalyzed plaintiff's termination by CGS as well as the loss of his family's residence. Plaintiff eventually obtained a copy of this report by subpoenaing it in connection with a State Court litigation.

As provided in § 422(8) plaintiff promptly requested an administrative hearing, which was not convened until October 17, 1984. After several lengthy adjournments it was finally concluded in January 1985. A decision was not rendered until May 28, 1985. The Commission, based in part upon Garrett's affidavit recanting his accusation, determined that there was no credible evidence to sustain the charge of maltreatment and held that it should be expunged.

### B. *The Prior State Court Litigation*

The plaintiff began his quest for judicial redress in State Court by filing an Article 78 proceeding "to require the State to promptly afford and complete administrative relief." Angrisani Aff. at ¶ 2. The plaintiff's petition alleged that the State had failed to undertake a thorough review, failed to notify him of the hearing and furnish him with all of the information in the State Register.

The proceeding was dismissed on the defendants' motion for failure to exhaust State administrative remedies. Plaintiff filed an appeal, but according to him that appeal was subsequently withdrawn "as the administrative proceeding ha[d] been completed and the administrative relief requested in the Article 78 petition ha[d] become moot." Angrisani Aff. ¶ 3.

### C. *The Federal Court Action*

Plaintiff commenced his case in federal court on June 21, 1985. He has subsequently amended the complaint twice. His latest pleading contains ten claims against the CGS, the City, the State and various individuals connected with those entities. In summary fashion the plaintiff seeks:

(1) A declaratory judgment that § 422 of the New York Social Services Law, on its face and as applied, is unconstitutional; and redress for

(2) Negligence on the part of individual defendants Usha Golikeri ("Golikeri"), Jared Kessler ("Kessler") and Pauline Phillips ("Phillips") and the CIU;

(3) Defamation by defendants Golikeri, Phillips, Cervino and Jackson;

(4) Defamation by the City of New York inasmuch as defendants Golikeri, Kessler, Phillips and CIU acted as the City's agents;

(5) The State's liability for all the wrongful acts of the defendants on the grounds that the defendants were acting as agents of the State;

(6) All defendants' complicity in wrongfully causing the termination of plaintiff's employment;

(7) Prima facie tort by all defendants;

(8) Wrongful termination by CGS;

(9) Cervino's instigation of a false and malicious report; and

(10) Negligence by CGS.

### D. *The Pending Motions*

Each group of defendants has moved for the dismissal of the complaint.[2] The City, named in claims 1–4, 6 and 7, has moved to

---

2. All of the parties have submitted numerous

affidavits in connection with their motions to

dismiss pursuant to Rule 12(b)(6) and on the grounds of res judicata and collateral estoppel. The State predicates its motion to dismiss claims 1–5 on res judicata grounds, Eleventh Amendment immunity of a State and its officials from suit and finally, vis-a-vis Cesar Perales, dismissal under Rule 12(b)(2) as he was never personally served with a copy of the original or first amended complaints. The CGS, named in the first, third and sixth through tenth claims, bases its motion on estoppel and res judicata grounds, Federal Rule of Civil Procedure 8(c), and Rules 12(b)(1) and 12(b)(6). Finally, with respect to Cervino, the basis is Rule 12(b)(2) as he, too, was never served with a copy of the summons and complaint. Esposito Aff. at ¶ 2.[3]

## DISCUSSION

In reviewing the voluminous pleadings, affidavits and memoranda submitted in connection with these consolidated motions, the Court has concluded that plaintiff's complaint—inartful as it may be—nevertheless is sufficient to withstand a dismissal at this early juncture. Although claims 8 and 9 appear redundant and claims 5, 6, 7 and 8 to be wholly without merit, the Court is compelled to allow plaintiff to press his federal constitutional and civil rights claims under the long line of cases that prevent a public employee from being "stigmatized" without due process of law, his common law defamation claims and his common law negligence claims.

### A. *The Res Judicata Argument*

All the moving defendants (except Cervino) assert that res judicata and collateral estoppel (claim and issue preclusion respectively) bar the present action in this Court. The State argues, citing *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), that a party may not relitigate in a federal forum all issues that were raised or could have been raised in a State Court action, including claims under 42 U.S.C. § 1983. State's Mem. at p. 5. The plaintiff, according to the State, "had a full and fair opportunity to raise all of his claims in the State Court proceeding." *Id.* Certainly, this Court concurs that the constitutional question could have been raised in the Article 78 proceeding by treating it as an action for a declaratory judgment. *Matter of Kovarsky v. Housing and Development Administration*, 31 N.Y.2d 184, 335 N.Y. S.2d 383, 286 N.E.2d 882 (1972); *see also Liotta v. Rent Guidelines Board for the City of New York*, 547 F.Supp. 800, 802 (S.D.N.Y.1982). However, under New York law res judicata does not attach unless there is an identity of issues which were necessarily decided in the prior action or proceeding. The rationale for the res judicata rule being that " '[j]ustice requires that every cause be once fairly and impartially *tried;* but the public tranquility demands that, having been once *so tried,* all litigation of that question, and between those parties, should be closed forever.' " *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826–27, 467 N.E.2d 487, 490–91 (1984) (emphasis added) (citations omitted).

Collateral estoppel, a narrower species of res judicata, precludes relitigation of an

dismiss under Rule 12(b)(6). However, none of the motions has been specifically redesignated as one for summary judgment (and there was ample opportunity to do so between the time the motions were first noticed and the date, over five months and numerous adjournments later, when the motions were finally argued before the Court). Therefore, we have excluded these supplemental submissions from our substantive consideration and have not converted these motions for judgment on the pleadings to ones for summary judgment. *See* Fed.R.Civ.P. 12(c).

3. In fact, Cervino was served with a copy of the summons and complaint in this action, but not until March 24, 1986, almost one year after the commencement of the action. Rule 4(a) of the Federal Rules of Civil Procedure hold the plaintiff's attorney "responsible for prompt service of the summons and a copy of the complaint." To ensure that this duty is fulfilled Rule 4(j) provides for the dismissal of a complaint as to any defendant not served within 120 days after the filing of the complaint. No good cause having been shown why plaintiff delayed for eight months before serving Cervino, the action against him is hereby dismissed.

issue only where: (1) the issue raised in the subsequent suit is identical to one *actually decided* in a prior suit, *RX Data Corp. v. Department of Social Services*, 684 F.2d 192, 197 (2d Cir.1982); (2) the determination of the issue in the prior suit was necessary and essential to the judgment in the prior action, *id.*, and (3) the party against whom collateral estoppel is being invoked had a " 'full and fair' opportunity to litigate the claims" in the prior action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 332–33, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979).

■ In this instance the Article 78 proceeding was dismissed due to plaintiff's failure to exhaust his State administrative remedies. Plaintiff's appeal of the dismissal was subsequently withdrawn.[4] Thus, the questions presented in this federal action were never fully and fairly litigated in a State Court action. Hence, neither claim nor issue preclusion prevents plaintiff from pursuing his case in this forum.

## B. *Dismissal for Failure to State a Claim*

A motion to dismiss for failure to state a claim upon which relief can be granted is designed to test the mettle of a claim. *CBS Inc. v. Springboard International Records*, 429 F.Supp. 563, 567 (S.D.N.Y. 1976). The standard governing judicial scrutiny of such motions is well known. Accepting the non-moving party's allegations at face value and construing them in the most favorable light, a court may grant the motion only if the moving party shows that there is no legal basis for the claim. When "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957), then a court may properly order the

dismissal of the claim. Otherwise the parties should be allowed to proceed with discovery and a trial to facilitate the presentation of facts which may substantiate the complaint. Operating under these guidelines the Court will now address the validity of the various claims.

## C. *The Constitutional Challenge to § 422*

Plaintiff claims that by the wording and operation of § 422 and the acts of the defendants he was "deprived of due process, liberty and property rights, without being fully apprised of accusations or reports used to do so, and without opportunity for a prompt and fair administrative hearing." Complt. at ¶ 26.

■ The requirement of procedural due process attaches only to governmental deprivations of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When a protected interest is implicated, some kind of meaningful hearing is obligatory. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, whether § 422 as applied to the plaintiff violates the Constitution requires a two-step analysis. First, the Court must determine if the plaintiff has a protected interest at stake. If so, the Court must then weigh the competing interests of the individual and the States to determine what process is constitutionally required. *See, e.g., Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365 (9th Cir.1976).

### 1. *A Property Interest*

■ An employee has a property interest in a job when he has a legitimate claim of entitlement to it, not a mere unilateral expectation. Thus, an employee who may not be fired without just cause possesses a

---

4. An Assistant Attorney General of the State of New York recently informed this Court that contrary to plaintiff's contention, and perhaps due only to a procedural technicality, that plaintiff's appeal is still pending. Letter from Robert Schack, Ass't Att'y Gen'l, to Judge Platt (June 25, 1986). In response to that letter plaintiff's attor-

ney apparently forwarded the stipulation of discontinuance to the Clerk of the Court of Appeals and hence a formal court order of discontinuance should issue shortly. Letter from Philip J. Kaplan, Esq., to Justice [sic] Platt (June 30, 1986).

property interest in his job while an at-will worker does not. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (where employer held to just cause standard, termination of employment requires notice and a hearing).

▮ Angrisani was employed by CGS under the terms of an oral agreement that was terminable at will.[5] Consequently, he had no protectible property interest in his job triggering a right to the due process safeguards.

### 2. *A Liberty Interest*

▮ A liberty interest is a "subspecies of the right of the individual 'to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.'" *Arnett v. Kennedy*, 416 U.S. at 157, 94 S.Ct. at 1645 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). A person's good name, reputation, honor and integrity all implicate a liberty interest. *Board of Regents v. Roth*, 408 U.S. at 572, 92 S.Ct. at 2706. In the context of the pending case, it is "the interest an individual has in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy." *Stretten*, 537 F.2d at 366.

The Court has recognized that this interest which inheres in all public employees may be jeopardized when an employee is terminated and the reason publicized without first affording the employee an opportunity to be heard. Such action may unfairly stigmatize the subject, hence, that person is entitled to a hearing to clear his name. *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976), *cf. Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976) (defamation by public official does not give rise to § 1983 claim if not in connection with

"some more tangible interests such as employment").

▮ Over the years courts have extended the protection, holding that the stigmatizing statements need not be false to trigger due process rights, *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), nor, according to at least one district court, must the statements actually be disseminated to the public. "It is enough if defendants knew or should have known that plaintiff's termination at that particular time would result in a public perception of plaintiff's culpability for the charges that were then being investigated." *Ray v. Edwards*, 557 F.Supp. 664, 670 (N.D.Ga. 1982), *aff'd*, 725 F.2d 655 (11th Cir.1984). Another district court held that placing a termination letter in an employee's personnel file which was accessible to prospective government employers satisfied the requirement of public dissemination. The Court noted that "public dissemination of the defamatory information may have no significance except as it bears on the extent of employment foreclosure—the focus of the due process inquiry in liberty deprivation cases." *Zurek v. Hasten*, 553 F.Supp. 745, 747 n. 5 (N.D.Ill.1982). The fact that the charges against Angrisani were on file in the State Register where prospective employers had access to them would appear to satisfy the public dissemination requirement.

### 3. *State Action*

The plaintiff in the case at bar was employed by a private not-for-profit organization, and State action is required before the due process rights of an employee are triggered. However, "[w]here a private enterprise stands, in its operations, as a veritable partner with the state, then it seems proper to hold such enterprise subject to the same constitutional requirements to which the state is accountable." *Braden v.*

---

**5.** Notwithstanding the fact that CGS receives public funding and is subject to the supervision of the New York State Department of Social Services, as indicated above, the Supreme Court for Richmond County hearing plaintiff's Article 78 proceeding prior to the commencement of

this action said that plaintiff was an employee of a private organization with an oral contract terminable at will. Even if only *dictum* we should accept this interpretation of New York law by a competent New York Court.

*Univ. of Pittsburgh,* 552 F.2d 948, 958 (3rd Cir.1977).

Courts have found that such "veritable partnerships" occur when a "symbiotic relationship between state and private enterprise" exists, *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589, 595 (3d Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980), or when there is a very close nexus between the two. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). While courts are duly cautious about infringing on private management's ability to discharge or expel undesirable employees, "[o]nce state action is present, the requirements of due process must be met notwithstanding the concurrence of private action. When the two sectors coalesce because of the exercise of public power and participation by the state with a private enterprise in the challenged activity, the resulting conduct must be characterized as state action requiring due process." *Fitzgerald,* 607 F.2d at 600 (when State officials with delegated authority to enforce State laws or regulations participate with private management in decisional process to expel an employee for violation of State racing commission rule, State action present triggering due process requirements).

In the case at bar the plaintiff was employed by a private not-for-profit organization but it was financed almost exclusively with Federal, State and City funds and was subject to the rules, regulations, recommendations and supervision of New York State's Department of Social Services. Furthermore, plaintiff alleged at oral argument that his termination came at the behest of the City, prompted by the § 422 mechanism. Consequently, the Court holds that the plaintiff has made a prima facie showing of State action.

### 4. The Process That is Due

■ Having determined that plaintiff has adequately alleged a liberty interest and a governmental deprivation, the Court is required to determine whether the pro-

cess accorded plaintiff satisfied the Due Process Clause. *Cleveland Board of Education v. Loudermill,* ── U.S. ──, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (Due Process Clause provides that certain substantive rights—life, liberty and property—may not be deprived except pursuant to constitutionally adequate procedures). In doing so the Court is aware that unlike some legal rules due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). It is a far more nebulous and amorphous concept, but at its core lies the fundamental tenet that a person may not be deprived of liberty or property without the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

■ Deciding "what procedures due process may require under any given circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action." *Cafeteria Workers v. McElroy,* 367 U.S. at 895, 81 S.Ct. at 1748. Fifteen years later the Supreme Court spelled out this balancing process in terms of a three-factor analysis. The Court must consider and weigh the following:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In the instant action the plaintiff's private interest lies in pursuing his chosen profession, providing for his family and preserving his good name and reputation.

As a result of the report maintained in the State Register for almost one year before it was expunged, plaintiff was severely hampered in pursuing those interests.

Regarding "the risk of an erroneous deprivation," the Court has before it a clear example of the fact that the operation of § 422 can result in mistaken reports. A pre-filing and pre-termination opportunity to respond to the charges which would allow plaintiff (i) to be apprised of the charges and to set forth his version of the facts, (ii) to request the withholding of the filing (publication) of the stigmatizing report until the conclusion of an evidentiary hearing, and/or (iii) to request suspension rather than termination pending the conclusion of an evidentiary hearing, might well have resolved this problem. Suspension and delayed publication, as opposed to immediate termination and publication, would not deprive plaintiff of a liberty interest because it would not stigmatize the plaintiff in the way that immediately circulating the charge of child abuse would. Of course, suspension may result in some adverse reflection on the plaintiff and would temporarily prevent him from practicing his profession. However, the damage would be minimized by the requirement of a prompt post-suspension hearing. Finally, balancing this harm with the Government's strong interest in preventing the maltreatment and abuse of children entrusted to its care, seems to strike an equilibrium; nor would this alternative impose undue fiscal and administrative burdens on the State.[6] *See, e.g., Peacock v. Board of Regents of the Univ. and St. Col. of Ariz.*, 510 F.2d 1324, 1328–29 (9th Cir.1975) (suspension pending a hearing did not impair plaintiff's liberty interest), *see also Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 369 n. 20 (9th Cir.1976).

Based on the foregoing analysis this Court may not say that there is no legal merit to plaintiff's first claim. The Court in no way offers a prediction of the ulti-mate outcome, but notes that "[a]t some point a delay in the post-termination hearing ... become[s] a constitutional violation." *Loudermill*, 470 U.S. at 547, 105 S.Ct. at 1496. In *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), the Court struck down § 8022 of the New York Unconsolidated Laws, which pertains to the suspension of harness racing trainers, because "the provision for an administrative hearing, neither on its face nor as applied in [the] case, assured a prompt proceeding and prompt disposition of the outstanding issues between the [plaintiff] and the State." *Barry, supra*, 443 U.S. at 66, 99 S.Ct. at 2650, *but cf. Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (administrative hearing held three months after dismissal is sufficient compliance with due process clause). Moreover, where a public employee has a property interest in his job "the process that is due is provided by a *pre* termination opportunity to respond, coupled with post-termination administrative procedures." *Loudermill, supra*, 470 U.S. at 547–48, 105 S.Ct. at 1496. In view of this analysis we feel we must hold that at this point the plaintiff has alleged enough to suggest that § 422 may be unconstitutional as applied and on its face to withstand a motion to dismiss.

### D. *The Defamation Claims*

In New York a common law privilege extends to any communication made in the discharge of a private or public duty, whether legal or moral. *Greenfield v. Kanwit*, 546 F.Supp. 220, 227 (S.D.N.Y. 1982); *Shapiro v. Health Ins. Plan of Greater New York*, 7 N.Y.2d 56, 194 N.Y. S.2d 509, 163 N.E.2d 333 (1959). Adopting the English rule, the Courts of this State have declared that:

A communication made *bona fide* upon any subject matter in which the party communicating has an *interest*, or in reference to which he has a *duty*, is privi-

---

**6.** The Court does not predict whether the suspension could be without pay, but notes that while some cases hold that suspension without pay constitutes a deprivation of property, in this instance plaintiff had no property interest in his job. Therefore, an inference that may be drawn is that CGS could suspend plaintiff without pay without violating the Due Process Clause.

leged if made to a person having a corresponding *interest* or *duty*, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation.

*Greenfield*, 546 F.Supp. at 227 (quoting *Harrison v. Bush*, 5 Ellis & Black [Q.B.] 344) (emphasis in original).

The privilege, to be sure, is a qualified one and may be overcome by a showing that the publication was motivated by actual malice. *Perfect Fit Industries v. Acme Quilting Co.*, 494 F.Supp. 505 (S.D.N.Y. 1980). Under New York law, malice of the sort sufficient to overcome a qualified privilege consists of personal spite, ill will, or culpable recklessness or negligence. *Greenfield*, 546 F.Supp. at 227.

■ Based on the allegations in the complaint and construing them in the light most favorable to the plaintiff, the Court is not prepared to state unequivocally at this juncture that there is no merit to plaintiff's claims of defamation and, therefore, the motion to dismiss as to this claim must also be denied.

### E. *The Charges Against the City*

The City has raised as a defense that it may not be held liable for any of the acts of its employees since *"respondeat superior* is not a basis for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)." City's Mem. at 13. The Court concurs with this statement, but is nevertheless reluctant to grant a summary dismissal because *Monell* is no longer the Supreme Court's latest pronouncement on municipal liability. In *Monell* the Court held that absent proof of a municipal policy that contributed to the plaintiff's injury a city may not be held liable under § 1983 for the acts of a lower echelon employee. Three years later the Court held that a policy could not be inferred from a single incident. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). This Spring the Court

modified the *Tuttle* holding in *Pembaur v. City of Cincinnati*, —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and conceded that a single decision by an authorized municipal policy maker may constitute "official policy" for purposes of establishing § 1983 liability.

■ In this Circuit the Court of Appeals has extended the reasoning of *Tuttle* to support a decision that a municipality's policy need not be unconstitutional to render a city liable under § 1983. *Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986). Given this state of flux the Court is not prepared to say that under no set of circumstances could plaintiff show that the City may be responsible for his injuries.

### F. *The State's Sovereign Immunity*

■ The Eleventh Amendment grants immunity to the States from suit in federal court absent their consent. Hence, a State is not a proper defendant to a § 1983 action, *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), absent an express waiver of its sovereign immunity, *Florida Dep't of Health and Rehabilitation Services v. Florida Nursing Home Ass'n*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), or in cases where prospective injunctive relief is sought, *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Similarly this immunity bars suits against State agencies or any "arm" of the State. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Florida Dep't of Health and Rehabilitation Services*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132. The State of New York has not expressly consented to be sued nor is plaintiff seeking prospective injunctive relief. The Court, therefore, dismisses all claims brought against the State.

■ When a suit is brought against a State official, as in this case against Cesar

Perales, Commissioner of the State Department of Social Services, the question arises whether the claims against the official are really against the State itself. "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (per curiam). "[A]s when the State itself is named as the defendant, a suit against State officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909.

 One important exception to this rule is a suit challenging the constitutionality of a State official's action on the theory that an unconstitutional enactment is void and does not relieve the official from accountability to the supreme authority of the United States. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Even in such cases, however, "retroactive relief [is] barred by the eleventh amendment." *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909. Plaintiff's prayer for relief seeks only a declaratory judgment and monetary relief, not injunctive relief. Hence, this Court dismisses the § 1983 action against defendant Perales as also being barred by the doctrine of sovereign immunity.

### G. *Wrongful Termination*

Plaintiff claims that all of the defendants are responsible and liable for his wrongful discharge by CGS. The defendants seeks dismissal on the grounds that New York, unlike many States, does not recognize the tort of wrongful or abusive discharge. *Murphy v. American Home Products,* 58 N.Y.2d 293, 301, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 88 (1983).

Plaintiff in opposing the motion relies on *Weiner v. McGraw-Hill Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), to argue that a just cause standard applies because his oral contract with CGS stipulated that "discharge was only to be for cause." Pl's Supp. Mem. at 26. In *Weiner* the New York Court of Appeals held that on an appropriate evidentiary showing an employer's right to terminate an employee of indefinite duration might be limited by an express provision in the employer's handbook on personnel policies or procedures.

 In this case the State Court found absolutely no evidence that any such policy existed. Justice Amann of Richmond County Supreme Court in dismissing plaintiff's Article 78 petition noted that plaintiff had no right to enjoin his termination because "[n]o contract of employment exists between the parties and [plaintiff's] position is not protected by statute other than the procedures provided in the Social Services Law." In short, the Justice found there was "no clear right to the relief requested." *Angrisani v. The City of New York,* SP 437/84 slip op. at 2 (January 3, 1984). The Court, therefore, grants defendants' motion to dismiss these claims on the grounds that plaintiff has failed to state a claim on which relief may be granted.[7]

### H. *Common Law Negligence*

In his second count plaintiff charges three individual defendants and the CIU with negligently failing to investigate and report; in his tenth count he charges the CGS with negligently failing to verify damaging accusations made by the employer against the plaintiff; and in his fourth and fifth counts he arguably charges the City and State with negligence of their "agents" as alleged in prior counts. As "bare bone" allegations these charges are minimally sufficient to withstand a motion to dismiss,

---

**7.** Although this issue has been passed on by the State Court, collateral estoppel does not apply because the issue was not "necessarily decided." At the conclusion of the paragraph quoted above, Justice Amann added, "[i]n any event,

petitioner has withdrawn this request for relief in his cross-motion." *Angrisani v. The City of New York,* SP 437/84 slip op. at 2 (N.Y.Sup.Ct. Jan. 3, 1985).

but certainly do little to inform the defendants of the claims against which they are going to have to defend.

### I. *Prima Facie Tort*

A recovery for prima facie tort affords a remedy for "the infliction of intentional harm resulting in damage without excuse or justification, by an act or series of acts which would otherwise be lawful." *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 866, 368 N.E.2d 1230, 1231 (1977) (citation omitted). Two components are critical to the claim. The first essential element is an allegation that the plaintiff suffered a specific and measurable loss. Absent an allegation of special damages, an action sounding in prima facie tort may not be maintained. *Wehringer v. Helmsley-Spear, Inc.*, 91 A.D.2d 585, 586, 457 N.Y.S.2d 78, 80 (1st Dep't 1982), *aff'd*, 59 N.Y.2d 688, 463 N.Y.S.2d 417, 450 N.E.2d 223 (1983). Second, the New York Court of Appeals has held that what makes an otherwise lawful act unlawful is a malicious motive. *Reinforce v. Birney*, 308 N.Y. 164, 169, 124 N.E.2d 104 (1954). More recently New York's Court of Appeals reaffirmed this standard: "[T]here is no recovery in prima facie tort unless malevolence is the *sole* motive for defendant's otherwise lawful act or, in Justice Holmes' characteristically colorful language, unless defendant acts from 'disinterested malevolence.'" *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 468 (1983) (plaintiff's prima facie tort claim dismissed because while defendant's conduct alleged to be intentional and malicious, plaintiff did not allege a *solely* malicious motive). *See also Rodgers v. Grow-Kiewit Corp.—MK*, 535 F.Supp. 814, 816 (S.D.N.Y.1982) ("motives of profit, economic self-interest or business advantage are by their terms not malicious, and their presence even if mixed with malice or personal animus, bars recovery under prima facie tort.").

■ Extrapolating the rationale from the case law recited, this Court concludes that the New York State Courts have confined prima facie tort to extreme cases and have zealously prevented it from becoming a catchall for assorted tortious conduct. Applying the strict State Court criteria to the case at bar this Court finds that plaintiff has failed to establish that intention to harm the plaintiff was the *sole* motive for the charge. Hence, this claim too is dismissed under Rule 12(b)(6).

### CONCLUSION

At the outset of this discussion we characterized plaintiff's second amended complaint as "inartful." We think a careful reading of the foregoing will make it clear that this was a charitable view of the conglomeration of asserted claims which we have labored to dissect and analyze on plaintiff's behalf. The upshot of all our efforts makes it clear that plaintiff, at best, has possible claims for (i) a deprivation of a liberty interest by reason of the wording and operation of § 422 and the actions of some of the defendants in failing to provide him with pre- and prompt post-termination hearings, (ii) common law defamation, and (iii) common law negligence against some of the defendants. Nonetheless, the complaint as presently drafted is woefully inadequate in any kind of "a short and plain statement of the claims" showing that the plaintiff is entitled to relief as required by Federal Rule of Civil Procedure 8(a)(2). Under the circumstances, although it is inappropriate to grant defendants' motions to dismiss because one or more of plaintiff's possible claims may be time-barred, and plaintiff, therefore, will be permitted to draft and serve a "third" amended complaint, we think Fed.R.Civ.P. 11 sanctions in the form of attorneys' fees on these motions are warranted to the extent that plaintiff is required as a pre-condition to such filing to pay counsel for each of the movants $100 or a total of $300. We do this because we believe plaintiff's counsel did not "make an adequate pre-filing inquiry into the facts and the law to satisfy the affirmative duty imposed by" Rule 11, thereby necessitating an inordinate expend-

iture of time and effort for all concerned. Fed.R.Civ.P. 11 Advisory Committee Note.

For the reasons set forth above, this Court grants the defendants' motions to dismiss in part and denies them in part. Plaintiff is given leave, pursuant to Fed.R. Civ.P. 15(a) to amend his pleadings for a third and final time to conform with this opinion and to serve and file such new pleading within thirty (30) days from the date hereof. In addition to the attorneys' fees prescribed above, plaintiff shall pay the costs of these motions.

SO ORDERED.