OPINION OF THE COURT
 

 Fuchsberg, J.
 

 The question presented on this appeal is whether the nondisclosure provision of subdivision (e) of section 697 of the Tax Law requires the Department of Taxation and Finance to refuse to comply with a Grand Jury subpoena duces tecum for the production of an individual income tax return.
 

 
 *578
 
 The subpoena was issued by the Statewide Organized Crime Task Force (OCTF).
 
 [1]
 
 The department moved to quash. The County Court denied the motion. On appeal from its order, the Appellate Division reversed (58 AD2d 298). Because we have concluded that disclosure of the taxpayer’s individual tax return would accord with neither the language nor the policy of subdivision (e) of section 697 of the Tax Law, we believe the order of the Appellate Division should be affirmed.
 

 Subdivision (e) of section 697 provides that "[ejxcept in accordance with proper judicial order or as otherwise provided by law, it shall be unlawful” for the department or any of its officers to divulge the information contained in any return filed with it, and that it "shall not be required to produce any of them or evidence of anything contained in them in any action or proceeding in any court”.
 

 Narrowly circumscribed exceptions are specified in the statute. They include use of the return in proceedings concerning the collection of taxes, or in cases where "the reports, returns or facts shown thereby are directly involved”; in such event, the court may then order the production of portions germane to the issues in dispute. Additionally, the exceptions allow for transmission of certified copies of returns to taxpayers themselves and, when litigation over tax liability has been commenced or recommended, to the Attorney-General. Reciprocal exchange of information with other taxing authorities is also permitted (subd [f]). None of these pertains to the case before us.
 

 The contours of this closely confined confidentiality are consistent with those governing returns for most other types of taxation in this State (see Tax Law, § 202 [corporation tax]; § 211, subd 8 [business corporation franchise tax]; § 437 [alcoholic beverages tax]; § 514 [highway use tax]; § 1146 [sales tax]; § 1467 [banking franchise tax]; § 1518 [insurance franchise tax]). These statutes, imposing virtually identical restraints on disclosure by the department or its employees of information contained in returns, have, not surprisingly, given rise to common problems of scope and interpretation (see
 
 Matter of Manufacturers Trust Co. v Browne,
 
 269 App Div 108, affd 296 NY 549;
 
 Matter of People v Johnson & Co.,
 
 213 App Div 402;
 
 People v Wedelstaedt,
 
 77 Misc 2d 918;
 
 Matter of
 
 
 *579
 

 Thaler v
 
 Murphy, 42 Misc 2d 1;
 
 Matter of Fowlkes,
 
 16 Misc 2d 1043). Taken together, they constitute a veritable chorus of policy declarations designed by our Legislature to insulate tax return information from scrutiny in nontax related matters.
 

 The unusually great store which the Legislature placed on the erection and maintenance of this wall of confidentiality is brought home by the nature of its prescription of penalties for any breach by the officers or employees of the department. It was not satisfied to rely on the usual administrative disciplinary devices. In this instance, it not only spelled out vocational punishments such as a fine, suspension or discharge, but included imprisonment for a year and prohibition on the holding of any other public office for five years (Tax Law, § 697, subd [e]).
 

 The policy considerations underlying these secrecy provisions are not of recent origin,
 
 [2]
 
 nor difficult to comprehend. Our deep concern for individual privacy and for protection from self incriminatory demands has long made us sensitive to the "substantial and difficult constitutional questions [posed by obligatory reports which] touch upon intimate areas of an individual’s personal affairs [and which] can reveal much about a person’s activities, associations, and beliefs”
 
 (California Bankers Assn. v
 
 Shultz, 416 US 21, 78-79 [Powell, J., concurring];
 
 Marchetti v United States,
 
 390 US 39;
 
 Hunter v City of New York,
 
 58 AD2d 136, 140-142, affd 44 NY2d 708; see, generally, 8 Wigmore, Evidence [McNaughton rev], § 2377 [f]; Required Report Privileges, 56 Nw U L Rev 283).
 

 Specifically, both in New York and elsewhere, it has come to be recognized that tax reports, in which private parties may reveal to the government many aspects of their personal affairs, warrant such protection (see
 
 Boske v Comingore,
 
 177 US 459, 469-470;
 
 Matter of People v Johnson & Co.,
 
 213 App Div 402,
 
 supra; Wales v Tax Comm.,
 
 100 Ariz 181;
 
 Sav-On Drugs v Superior Ct.,
 
 15 Cal 3d 1;
 
 Leave v Boston Elevated R. Co.,
 
 306 Mass 391).
 

 It is also clear that the interest protected by restrictions on disclosure is not purely that of an individual in his own privacy, significant as that is. By preventing the use of compulsorily self-reported tax information in ways that could
 
 *580
 
 harm the reporting taxpayer, the State serves its own administrative ends as well (cf.
 
 Matter of Bakers Mut. Ins. Co. [Department of Health],
 
 301 NY 21).
 

 Full compliance with its laws on such information-gathering is particularly vital to tax collection. Without gainsaying the fact that penal sanctions against tax evasion constitute the ultimate compulsion for observance of these laws (see
 
 Garner v United States,
 
 424 US 648, 652-653;
 
 United States v King,
 
 73 FRD 103, 108), the degree to which self-reporting and partial self-auditing by the taxpayer is relied on by our revenue system is not to be underestimated. Were it not for the volitional acts of countless citizens in providing complete statements of their financial affairs, the manpower and resources which would have to be expended to enforce our tax laws would increase enormously. "[Bjasically the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability”
 
 (United States v Bisceglia,
 
 420 US 141, 145).
 

 Clearly, the Legislature, in whom resides the power to levy taxes under our scheme of government (NY Const, art III, § 1;
 
 Matter of United States Steel Corp. v Gerosa,
 
 7 NY2d 454, 459), has reached a calculated conclusion that, if the information provided by taxpayers is held in the strictest confidence, the temptation to withhold information and, consequently, tax payments, will be warded off. Thus, it is recognized that a major "purpose of * * * statutory provisions prohibiting disclosure is to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that these statements will be revealed or used against him for other purposes”
 
 (Webb v Standard Oil Co.,
 
 49 Cal 2d 509, 513).
 

 Significantly, the exceptions contained within the statute are integrally related to this dominant purpose. By allowing the limited use of returns in investigations and proceedings dealing with the collection of taxes themselves, or in cases in which the returns themselves are at issue, the statute serves to insure swift enforcement of revenue laws and to prevent other irregularities in the processing of tax collections. So too does the provision allowing for the reciprocal sharing of information with other taxing jurisdictions. And neither the State’s interest in obtaining a full report nor the taxpayer’s in his privacy is diminished by affording the right to receive a certified copy of his or her own return. But, notedly, none of
 
 *581
 
 these exceptions allows disclosure of tax information for other governmental purposes than those related to the marshaling of revenues. It is therefore inescapable that the bar on its use "in any action or proceeding in any court” must include nontax criminal proceedings.
 

 To be sure, our Legislature has enacted other statutes which allow intrusion into the protected domain of tax return information. For example subdivision 8 of section 663 of the Education Law, which deals with the monitoring of data on applications made by students seeking financial aid, requires the State Tax Commission in certain situations to compare information submitted for that purpose with that appearing on tax returns and to indicate to the education authorities any discrepancy that is thus made to appear. Similarly, section 49 of the Executive Law explicitly provides that section 697 of the Tax Law shall not be construed to prevent the welfare inspector general, who is charged with investigation of the efficiency and probity with which the allocation of funds for those in need of public assistance is administered (Executive Law, § 48), from obtaining "the name, address, social security number, employment history and number of dependents claimed” by recipients suspected of abusing the system. However, it is interesting that it required the adoption of these statutory sections, which consciously and articulately expressed a legislative determination that these exceptional public interests permit deviation from the policies embodied in the secrecy provisions of the Tax Law, to allow even the limited disclosure so permitted. Moreover, since these relate to eligibility for aid voluntarily sought from the State and no disclosure is required unless the application is pursued, disclosure may be thought to have a voluntary character (cf.
 
 Matter of Strycker’s Bay Apts. v Walsh,
 
 67 Misc 2d 134).
 

 Furthermore, we can find no comparable legislative decision to ease the restrictions in favor of the OCTF. To fill this vacuum, respondent places heavy reliance on subdivision 3 of section 70-a of the Executive Law which directs the Department of Taxation and Finance, as well as every other State agency, to afford the Deputy Attorney-General in charge of the Task Force "cooperation and assistance in the performance of his duties”. But such a generalized authorization to "cooperate”, which is commonplace in the statutory descriptions of the powers granted public State agencies (see, e.g., ECL 3-0301, subd 2, pars d, i; Vehicle and Traffic Law, § 210,
 
 *582
 
 subds 4, 6; L 1951, ch 784, § 21, subd 3, par q [as amd] [Civil Defense Comm.]; L 1974, ch 576, § 13 [covering State Division of Housing and Community Renewal, "any” rent guidelines board, and New York City Conciliation and Appeals Bd.]) hardly can serve to lift the very clear strictures placed on the Department of Taxation by subdivision (e) of section 697. We find indorsement for that view in the memoranda accompanying the enactment of section 70-a of the Executive Law which speak of co-operation in terms of personnel assistance and are completely silent on the confidentiality issue (NY Legis Ann, 1970, pp 36, 535-536).
 

 Nor can the subpoena be justified in this case by reference to subdivision (e) of section 697’s initial exception for disclosures "in accordance with proper judicial order”. Absent possible circumstances so extraordinary that they plumb the very depths of judicial and Grand Jury power, a "proper order” is one which either effectuates the enumerated exceptions within the statute or which arises out of a case in which the report is itself at issue, as in a forgery or perjury prosecution.
 

 It is true, as the Task Force urges, that a Grand Jury has very broad investigative powers (see
 
 People v Stern,
 
 3 NY2d 658;
 
 Matter of Manning v Valente,
 
 272 App Div 358, affd 297 NY 681; cf.
 
 Matter of Heisler v Hynes,
 
 42 NY2d 250;
 
 Matter of Sussman v New York State Organized Crime Task Force,
 
 39 NY2d 227). These powers must, however, be exercised in accordance with the procedural and evidentiary rules laid down in the Criminal Procedure Law and other statutes, none of which sanctions a general remission of the Tax Law’s call for secrecy merely to accommodate a Grand Jury subpoena in a case where there is a total absence of any showing or intimation that the investigation bears some relationship to tax matters (see CPL 190.30, 190.40, 60.10, 610.10).
 

 Whether or not there may be Grand Jury nontax investigations in which the extraordinary circumstances to which we have so hypothetically and cautiously referred, and in which great public urgency exists and alternative means to secure the information are totally lacking, it is clear beyond peradventure that this is not such a case.
 

 The order of the Appellate Division should, therefore, be affirmed.
 

 
 *583
 
 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, and Cooke concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . The OCTF was created by section 70-a of the Executive Law. The nature of the investigation it was conducting in this case does not appear in the record. There has, in any event, been no allegation that it dealt with a violation of the Tax Law.
 

 [2]
 

 . The enactment of article 16 of the Income Tax Law was by chapter 627 of the Laws of 1919. Section 384 of that article was the secrecy provision of the Income Tax Law. The statutory language here at issue is virtually identical to the original 1919 enactment.