**Connie Fern VAN EMRIK and Richard H. Van Emrik, individually and as parents of Lane Astrid Van Emrik and Kate Anna Van Emrik, Plaintiffs,**

v.

**CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Nancy Smith, individually and as an employee of the Chemung County Department of Social Services, Marcia A. Allen, individually and as an employee of the Chemung County Department of Social Services, Defendants.**

No. Civ. 87–0914L.

United States District Court,
W.D. New York.

June 6, 1988.

---

Martin A. Luster, Luster, Salk & Henry, Trumansburg, N.Y., for plaintiffs.

John F. O'Mara, Davidson & O'Mara, P.C., Elmira, N.Y., for defendants.

## DECISION AND ORDER

KENNETH R. FISHER, United States Magistrate.

In this civil rights action, brought pursuant to 42 U.S.C. § 1983, the plaintiff and her parents seek redress from the Chemung County Department of Social Services and two of its employees for the allegedly warrantless removal of the plaintiff, then an infant of seven months, from the custody of her natural parents and her subsequent placement in foster care for a period of about one week. The Complaint alleges that, on May 15, 1986, the plaintiff was discharged to the custody of her parents from St. Joseph's Hospital in Elmira, New York, by her attending physician following some two day's treatment for a spiral fracture of plaintiff's right femur which allegedly occurred while plaintiff was in the care of a babysitter. The Complaint alleges further that defendants unlawfully detained plaintiff following her discharge while they obtained an ex parte order of removal from Chemung County Family Court, *see* N.Y.Soc.Serv. Law § 424(8) (McKinney 1983); N.Y.Fam.Ct. Act §§ 1021–1029 (McKinney 1983), on the basis of a false and misleading affidavit. According to the Complaint, plaintiff's placement in foster care lasted until she was readmitted to St. Joseph's and then later discharged to her natural parents on May 23, 1986.

After issue was joined, the parties engaged in discovery until a dispute arose concerning plaintiff's request for production of the "complete file of the Chemung County Department of Social Services of their investigation into the leg injury sustained by the Plaintiff, ..." Plaintiffs' Notice to Produce ¶ 1 (filed December 31, 1987). The parties agreed to submission of the DSS file *in camera* to Judge David G. Larimer, and the attorney for defendants mailed a complete copy to the court on March 9, 1988 together with a letter outlining defendants' position. By letter dated March 11, 1988, Judge Larimer agreed to this informal mechanism for resolution of the discovery dispute, but requested a letter-memorandum from plaintiffs' counsel in support of the application for the DSS file. Judge Larimer also requested defendants' counsel to "respond and indicate what documents are in dispute and, with reference to each document or group of documents[,] why disclosure should not be ordered."

I

Plaintiffs' counsel complied with Judge Larimer's request in a letter-memorandum dated April 6, 1988. In this letter, plaintiffs detailed their case for disclosure and, in particular, cited N.Y. Social Services Law § 422(7), which provides for disclosure of a file such as is involved in the instant case to the subject of the report except to the extent "that the Commissioner [of the New York State Department of Social Ser-

vices [*] is authorized to prohibit the release of data that would identify the person who made the report or who cooperated in a subsequent investigation, which he reasonably finds will be detrimental to the safety or interests of such person." N.Y.Soc. Serv. Law § 422(7) (McKinney Supp.1988). Plaintiffs contend that this provision authorizes, at least, redacted disclosure to them of the entire file, and that redaction is unnecessary in this case because plaintiffs already know the name of the Department's original informant (the attending physician), and because several other documents already provided by defendants' counsel which might have been redacted were disclosed with the identifying information left complete. Regarding the "contact sheet and the internal reports, notes, and memos of the Department," plaintiff has agreed to accept "appropriately redacted" copies "if they contain names of informants disclosure of which would create a danger for those informants." *See* letter of Martin A. Luster, Esq., dated April 6, 1988, at p. 2.

In response, defendants' counsel wrote to Judge Larimer on April 18, 1988, simply stating that defendants "oppose any release of information concerning confidential sources of information supplied to investigators or the New York State Central Registry of Child Abuse." Defendants did not controvert any of the statements contained in plaintiffs' letter-memorandum, nor did they attempt to identify which portions of the DSS file previously submitted *in camera* were considered to be "confidential" within the meaning of New York State's Social Services Law or any other applicable statute or rule of privilege. Defendants do not contend that any document in the file is not "relevant" within the meaning of Fed.R.Civ.P. 26(b)(1). Most important, defendants do not refer to any administrative determination in this specific case that the Commissioner of the Department of Social Services or an authorized designee, if any, "reasonably" found that disclosure of an informant's name

"will be detrimental to the safety or interests of such person." *See Angrisani v. City of New York,* 639 F.Supp. 1326, 1329–30 (E.D.N.Y.1986) (quoting N.Y.Soc.Serv. Law § 422[7]).

By order filed May 13, 1988, Judge Larimer considered the foregoing correspondence and submissions as a motion to compel disclosure pursuant to Fed.R.Civ.P. 37(a), and referred the matter to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(A). Judge Larimer's order notified the parties that the motion was considered submitted on papers and invited the parties to make any further submission or request for a telephone conference by May 20, 1988. No such submission or request having been made, the motion to compel is hereby granted for the following reasons and in accordance with the conditions specified below.

## II

■ Whether the subject file may be discovered is, in general, governed by Fed.R. Civ.P. 26(b)(1), which provides that "[p]arties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action, . . . , including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." (emphasis supplied). The question of privilege, in turn, is governed by Rule 501 of the Federal Rules of Evidence and, with respect to an action in which the complaint alleges a federal claim (here under 42 U.S.C. § 1983) and various state law claims invoking the court's pendent jurisdiction, "courts consistently have held that the asserted privileges are governed by the principles of federal law." *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 141 (2nd Cir.1987), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). Accordingly, while New York's Social Services Law may not provide the "rule of deci-

---

[*] *See* N.Y.Soc.Serv. Law § 2(6) (McKinney 1983) ("Commissioner means the state commissioner of social services"). Contrast, *id.* (subdiv. 10) ("Commissioner of social services shall mean a city or county commissioner of social services").

sion" and therefore wholly determine the parameters of the privilege invoked by defendants in this case, principles of federalism and comity, which direct a federal judge to the properly restrained role of the court in the federal system, require consideration of the formulation of a privilege rule under state law. *Id.*, 811 F.2d at 144. Moreover, a close functional scrutiny of the state interests embodied in its rule of privilege and any countervailing federal interests implicated in the case should be undertaken to ensure vindication of the paramount federal interest with as minimal an intrusion on the state interests as is consistent with the federal claim. *Matter of International Horizons, Inc.*, 689 F.2d 996, 1004 (11th Cir.1982); *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1343 (5th Cir.1981); *Lora v. Board of Education of the City of New York*, 74 F.R.D. 565, 576 (E.D.N.Y. 1977); *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976).

■ However, it is not clear whether the New York Legislature, by its enactment of § 422, intended to create an evidentiary "privilege" within the meaning of Fed.R. Civ.P. 26 and Fed.R.Evid. 501. A non-disclosure or "confidentiality" provision in a statute may not always create an evidentiary privilege, especially if the legislature did not "explicitly create an evidentiary privilege." *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d at 1339, 1342. Merely asserting that a state statute declares that the records in question are "confidential" does not make out a sufficient claim that the records are "privileged" within the meaning of Fed.R.Civ.P. 26(b)(1) and Fed.R.Evid. 501. *See Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1205 (9th Cir.1975) (state adoption records limiting disclosure); *Zucker v. Sable*, 72 F.R.D. 1, 4 (S.D.N.Y.1975) ("even if it were confidential" the information is "not necessarily outside the scope of Rule 26[b][1]"); *Luey v. Sterling Drug, Inc.*, 240 F.Supp. 632, 636 (W.D.Mich.1965) ("Confidential materials are not thereby excluded"). *Cf., Hayden v. Maldonado*, 110 F.R.D. 157, 160 (N.D.N.Y.1986) (a federal court need not follow N.Y. Civil Rights Law § 50–a).

Indeed, the confidentiality provision at issue in this case exempts the person who is the subject of the report, including the child's parent or guardian, N.Y.Soc.Serv. Law § 412(4) (McKinney Supp.1988), from its terms without qualification. Subdivision 4 of Section 422 provides that "[r]eports made pursuant to this title as well as any other information obtained, reports written or photographs taken concerning such reports in the possession of the ... local departments [of Social Services] shall be confidential and shall only be made available to ... (d) any person who is the subject of the report·or other persons named in the report." N.Y.Soc.Serv. Law § 422(4) (McKinney Supp.1988). Separately, with respect to records in the Statewide Central Register, Subdivision 7 of Section 422 provides that "[a]t any time, a subject of a report and other persons named in the report may receive, upon request, a copy of all information contained in the central register; provided, however, that the Commissioner is authorized to prohibit the release of data that would identify the person who made the report or who cooperated in a subsequent investigation, which he reasonably finds will be detrimental to the safety or interests of such person." N.Y.Soc. Serv. Law § 422(7) (McKinney Supp.1988). Accordingly, it is doubtful that the Legislature, in choosing such words, intended to create an evidentiary privilege. More likely, the Legislature sought only to ensure that where the Commissioner of Social Services finds in any particular case that identifying details "will be detrimental" to an individual's safety, he might intervene to prevent disclosure of the individual's name. Contrast, N.Y.Civ.Prac. Law §§ 4501–4505, 4507–4508 (McKinney 1963 & Supp.1988) (enumerating the various privileges codified by the Legislature); N.Y.Civ. Rights Law § 79–h (McKinney Supp.1988) (employing the language of a true privilege) (discussed in *von Bulow by Auersperg v. von Bulow*, 811 F.2d at 144).

We need not reach the issues whether § 422 was intended to create an evidentiary privilege under state law, and whether, if it was so intended, the privilege thereby cre-

ated must by the operation of Fed.R.Evid. 501 be superseded or defeated by the discrete federal interests implicated in this § 1983 action. This follows because the defendants do not attempt to interpose a federal rule of privilege and the plaintiffs simply contend that disclosure is warranted under New York law. Moreover, in instances where disclosure may not be warranted under the statute, plaintiffs have agreed to redacted disclosure.

■ Accordingly, if the New York statute authorizes disclosure in the circumstances of this case, the court need go no further to grant plaintiff's motion to compel. As indicated, the statute by its terms exempts plaintiffs from its confidentiality provisions, N.Y. Social Services Law § 422(4)(d), § 412(4), and further authorizes the provision of copies to plaintiffs, "upon request, ... of all information contained in the central register" in the absence of a finding to the contrary by the State Commissioner of Social Services. N.Y.Soc.Serv. Law § 422(7) (McKinney Supp.1988); *Angrisani v. City of New York,* 639 F.Supp. at 1329–30. Defendants state in their April 18th letter that they "oppose any release of information concerning confidential sources of information supplied to investigators or the New York State Central Registry of Child Abuse", but they do not allege that the Commissioner made the finding required to trigger the limited rule of confidentiality applicable to plaintiffs. In any event, records maintained by the local social services departments are governed by subdivision 4 of § 422, which separately authorizes disclosure to plaintiffs without regard to whether the Commissioner has made a finding.

In view of the current state of the record, therefore, the motion to compel disclosure of the Chemung County DSS file is granted. However, because plaintiffs have agreed to accept appropriately redacted copies of the "contact sheet and the internal reports, notes and memos of the Department," if defendants believe disclosure would create a danger to the informants, defendants may examine those portions of the file and make appropriate redactions upon their reasonable finding that such a danger exists. Because disclosure is authorized by § 422 to the extent indicated, there was no need to conduct an *in camera* examination of the file mailed to Judge Larimer. The subject file is returned to defendants so that compliance with this order may be effected.

The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 37(a)(2), this order shall be final unless within ten (10) days after being served with a copy thereof a party files with the Clerk and serves upon opposing counsel a written appeal specifying the party's objections and the manner in which it is claimed that this order is clearly erroneous or contrary to law.