**ANN L., Plaintiff,**

**v.**

**X CORPORATION,\* Defendant.**

United States District Court, W.D. New York.

Oct. 16, 1990.

### DECISION AND ORDER

KENNETH R. FISHER, United States Magistrate.

In this action, plaintiffs seek damages in product liability arising out of an injury to a small child. Defendant contends that the

---

\* The names of the parties have been changed to protect confidentiality. Certain names within the opinion have been redacted also.

plaintiff parents "negligently entrusted" the product to its operator, another person. Discovery proceedings have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(A).

Plaintiff moves for a protective order pursuant to Fed.R.Civ.P. 26(c), including suppression of County Department of Social Services records ordered expunged by a Administrative Law Judge in accordance with N.Y. Social Services Law § 422. Plaintiff also moves for disqualification of defense counsel on the ground of misconduct in the issuance of an improper subpoena duces tecum served upon the County for such records without notice to plaintiffs' counsel. The expunged file, currently in the possession of defense counsel, is directly relevant to defendant's negligent entrustment defense. The motion has been made by letter and answered by letter. After the court ordered that the County supply additional information, which the parties themselves failed to provide and which the court thought necessary to an informed decision of the motions, the County Attorney provided affidavits of the underlying circumstances and its expungement procedures. The parties have been given several weeks to evaluate this additional information, and to provide additional submissions, but nothing further was filed.

The facts are not in dispute. On January 24, 1990, defense counsel obtained the issuance of a subpoena duces tecum by the Clerk's office. It appears that, in accordance with Fed.R.Civ.P. 45(a), the Clerk issued the subpoena "signed and sealed but otherwise in blank" to Mr.      who in turn "fill[ed] it in before service." *Id.*[1] The subpoena was directed to the County Department of Social Services (Child Protective Unit) at address. It commanded that unit to appear at the offices of Mr.      on February 15, 1990, with documents relating to "any proceeding under Section 1012 of the Family Court Act regarding the parents of the injured infant plaintiff." In addition, it requested any records or documents concerning any report of child abuse, neglect or negligence made to the County Department of Social Services and relating to proceedings involving child abuse. No notice to plaintiffs' counsel was ever attempted. The return of the subpoena indicates that it was served on January 25, 1990, to Ms. A an administrative secretary with the Child Protective Unit of the Department of Social Services. The subpoena was apparently delivered by Ms. A to Ms. B, Executive Secretary to the Director of the County Department of Social Services. Ms. B then forwarded the subpoena to a unit of DSS. The subpoena was logged in the next day, January 26, 1990. A computer search discovered two closed cases involving plaintiff's family. Clerks in the Unit obtained "the Records from a unit called "Active Files." The records procured included the expunged file. The records were given to a clerk for copying, and the copies were sent to Mr.      's address. The original record was returned to "Active Files."

**1.** The Clerk apparently issued the subpoena in response to defense counsel's request for a subpoena commanding attendance at a trial or court hearing, because the Clerk's office issued a Form AO 89 "Subpoena" commanding presence "in the United States District Court." Defense counsel then entered, in the box provided for describing the relevant court term, the address of his law office. This amounted to a conversion of a trial or hearing subpoena (AO Form 89), governed by Fed.R.Civ.P. 45(e), into a deposition subpoena or deposition subpoena duces tecum (AO Form 90), governed by Fed.R.Civ.P. 45(b), (d). The docket sheet and the file revealed that Mr.      failed to file a Notice of Deposition together with proof of service thereof, which is consistent with the Clerk's issuance of a Rule 45(e) subpoena. The requirements for issuance of a deposition subpoena are different.

According to Rule 45(d)(1), "[p]roof of a notice to take a deposition ... constitutes a sufficient authorization for the issuance by the clerk ... of subpoenas for the persons named or described therein." The rule provides further that "proof of service may be made by filing with the clerk ... a copy of the notice together with a statement of date and manner of service and of the names of the persons served, certified by the person who made service." As the Advisory Committee Notes to the 1980 Amendment make clear, "[a]ll that seems required is a simple certification on a copy of the notice to take a deposition that the notice has been served on every other party to the action." Fed.R.Civ.P. 45(d)(1) (1980 Advisory Committee Notes). On the applicability of these requirements to the issuance of a subpoena duces tecum, *see infra.*

No effort was made by DSS to consult with attorneys representing the Department of Social Services. The County's response to the subpoena was in violation of its established procedures.

An affidavit filed by the Child Protective Services Coordinator for DSS states that she received the decision to expunge the records from the Office of the State Central Register for Child Abuse. The coordinator states that she forwarded the Administrative Law Judge's decision to expunge in the normal channels but that for some reason "unbeknownst to me" the cover letter from the State Register together with decision was simply placed in the file, and the further required expungement procedures pursuant to N.Y. Social Services Law § 422(9) were not undertaken. The Child Protective Services Coordinator further states that:

> The physical act of expungement is usually done by the tearing up of a page at a time by a clerk, although there is an occasional shredding by a mechanical shredder. In those cases where a portion of the file has been unfounded, and where subsequent reports are registered under the same SCR number, only those reports specifically designated to be unfounded by the SCR will be eliminated or destroyed. The remainder of the file will not be expunged, unless the entire file has been so designated by a recommendation from the SCR.

Ms. C's affidavit, at ¶ 4. It is therefore clear on this record that, absent the failure of DSS employees to comply with the expungement procedures ordered by the Administrative Law Judge, compliance with the subpoena duces tecum prepared by the Mr.     would have been impossible. The records simply would not have been in existence.

■ Contrary to defendant's argument, an order of suppression is a permissible remedy under the "catch all clause" of Fed.R.Civ.P. 26(c). *See Harlem River*

*Consumers Cooperative, Inc. v. Associated Grocers of Harlem, Inc.*, 54 F.R.D. 551, 553 (S.D.N.Y.1972); *E.E.O.C. v. United Association of Journeymen and Apprentices*, 311 F.Supp. 464, 465–66, 468 (S.D. Ohio 1970) (suppression under then Rule 32); 4 J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 26.78 at pp. 26–499–500 (2d ed. 1984). At the same time, plaintiff's argument that I should simply apply the state law suppression remedy articulated in *Matter of Weinberg*, 129 A.D.2d 126, 517 N.Y.S.2d 474 (1st Dept.1987) (per curiam), *see also*, N.Y.Civ.Prac.Law R. 3103(c), is also without merit. For the reasons stated in *Dixon v. 80 Pine Street Corporation*, 516 F.2d 1278, 1280 (2d Cir.1975) ("while the substantive question of privilege is governed by the law of New York ... [in a diversity action], the discovery procedure is governed by the Federal Rules"), application of federal law to the question whether there was an irregularity in defense counsel's use of the subpoena duces tecum is required. Federal law also governs whether a suppression remedy, or the draconian remedy of disqualification, is appropriate in the circumstances. The determination herein is, therefore, made quite without regard to N.Y.Civ.Prac.L.R. § 3103(c). *See* 4 J. Moore, J. Lucas *Moore's Federal Practice* ¶ 26.60[7] at 26–229 (2d ed. 1984) ("state rules that deal with pre-trial discovery rather than privilege have no place in the federal court litigation").[2]

■ Whether an adverse party is entitled to notice when a subpoena duces tecum (Fed.R.Civ.P. 45(b)) is served on a nonparty is answered as follows:

> In the case of discovery from a person not a party, a subpoena duces tecum must be served, including tender of fees and travel allowances to the place at which the deposition is to be taken. Since the language permitting demand for production for inspection and copying was placed in subdivision (d) of Rule 45,

---

**2.** Jurisdiction of a magistrate over suppression motions in civil cases under 28 U.S.C. § 636(b)(1)(A) is confirmed by that subparagraph's enumeration of criminal case suppression motions as excluded from subparagraph

(b)(1)(A) jurisdiction. The clear inference is that suppression motions in civil cases under Fed.R.Civ.P. 26(c) may be determined by a magistrate, subject to a "clearly erroneous or contrary to law" standard of review.

rather than in subdivision (b), *a notice to take deposition is a condition precedent to the issuance of a subpoena duces tecum.* It has already been pointed out, however, that the better authority indicates that oral testimony need not actually be taken.

5A J. Moore & J. Lucas, *Moore's Federal Practice,* ¶ 45.07[3] (2d ed.1989) (emphasis supplied). In a footnote the cited treatise explains why a notice to take a deposition is a condition precedent to the issuance of a subpoena duces tecum:

> Just why the production of documents by persons not parties was thus made dependent upon the taking of a deposition is unclear. The fact that Rule 30 was amended to require that in the notice to take a deposition if a subpoena duces tecum is to be served on the deponent, a copy of the subpoena must be attached or a designation of the materials to be produced included in the notice lends credence to the possibility that the intention was simply to tie the procedure into existing provisions for notice to an objection by the parties.

5A J. Moore, *Moore's Federal Practice and Procedure,* ¶ 45.07[3] n. 13. Unquestionably, a notice requirement was intended by the drafters of Rule 45.

█ The available case law goes further. Some courts have held that there is no authority for the service of a subpoena duces tecum on a non-party if the party requesting the subpoena does not intend to actually depose the third party. *See F.T.C. v. Gibson Products of San Antonio, Inc.,* 569 F.2d 900, 905 n. 14 (5th Cir.1978); *Jones v. Continental Casualty Co.,* 512 F.Supp. 1205, 1206 (D.Nev.1981); *Newmark v. Abeel,* 106 F.Supp. 758, 759 (D.C. N.Y.1952); C. Wright and A. Miller, *Federal Practice and Procedure* § 2455 (text at n. 35); 28 Fed.Proc.L.Ed. § 65.149. Such a rule would have required the party serving the subpoena duces tecum in this case to also serve a deposition subpoena on the third party (which requires notice of the deposition to all parties) indicating his or her intent to depose the third party. Whether these cases should be taken as authoritative, *compare Kendrick v. Heckler,* 778 F.2d 253, 257–58 n. 7 (5th Cir.1985) ("A notice to take a deposition is a condition precedent to the issuance of a subpoena duces tecum") (dictum)[3], *with, In re Guthrie,* 733 F.2d 634, 637 n. 8 (4th Cir. 1984) (reserving the question), some form of notice that a third party subpoena duces tecum has been served must be given under the rule. Otherwise, the provision in Rule 45(d)(1) stating that the provisions of Rule 26(c) are available in the context of a subpoena duces tecum would be rendered a nullity. Good faith requires that there be notification to the opposing party of the third party subpoena duces tecum. *Cf. Bowers v. Buchanan,* 110 F.R.D. 405, 406 (S.D.W.Va.1986) ("the requirement that a notice of deposition be filed prior to issuance of a deposition subpoena duces tecum serves as a brake on runaway use of the instrument"). Defense counsel's procurement of discovery from the County thus violated these fundamental and necessary requirements.

The factual development of the circumstances provided by the County demonstrates that a suppression remedy is appropriate and necessary. The County's explanation of the workings of the state expungement law, together with the undisputed evidence that the County routinely destroys documents ordered expunged, shows that defense counsel's error in failing to afford notice to plaintiff of the subpoena duces tecum directly contributed to discovery of the files ordered expunged. Had the County's procedures not included destruction of expunged records, or if the state expungement law allowed custodians to preserve expunged records for subsequent use, as for example in subsequent litigation, the result might be different and defense counsel's failure to give notice might be deemed fortuitous. But the information provided by the County fully establishes that, in view of its own error in preserving the records, the only way disclo-

---

**3.** *Kendrick* was cited in *Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.,* 825 F.2d 676, 679 (2d Cir.1987), but the Second Circuit's opinion gives no clue of its view on this issue.

sure in violation of the expungement law could have been prevented was by compliance with the notice requirement of Rule 45(d)(1), which in turn would have permitted plaintiff to make a Rule 26(c) motion for a protective order and to seek the timely intervention of the County Attorney's office both in the administrative process of expungement and in bringing on a motion to quash in this court. Fed.R.Civ.P. 45(b).

A more troublesome issue is whether, given the County's failure to carry out the expungement order, defendant would have prevailed on a motion to quash by the County or a motion for a protective order. Without causation, that is if the files are discoverable in any event, a suppression remedy would be appropriate only if the policy favoring the search for truth by open discovery is outweighed by a countervailing need to protect the integrity of discovery rules in federal courts by means of an exclusionary rule. A suppression remedy would also not be appropriate unless "justice requires, ... protect[ion] of ... [the plaintiffs] from annoyance, embarrassment, [or] oppression, ..." Fed.R.Civ.P. 26(c). A resolution of this knotty question of federalism and the role of a federal court supervising discovery in diversity cases is unnecessary, however, because the Child Protective Service Unit files ordered to be expunged in this case are not discoverable under the federal rules. If defense counsel had complied with Rule 45(d)(1) by providing notice, defendant would not prevail on a putative motion for a protective order or a motion to quash.

Under Fed.R.Civ.P. 26(b)(1), discovery may be had of any matter likely to lead to admissible evidence that is "not privileged." In a diversity action, "the issue of privilege is to be governed by the substantive law of the forum state, here, New York." *Dixon v. 80 Pine Street Corporation*, 516 F.2d at 1280. *See also, Application of American Tobacco Company*, 880 F.2d 1520, 1527 (2d Cir.1989); *Massachusetts Mutual Life Insurance Company v. Brei*, 311 F.2d 463 (2d Cir.1962); Fed.R. Evid. 501. In this case, the relevant statute is N.Y. Social Services Law § 422. Defendant relies on this court's decision in

*Van Emrik v. Chemung County Department of Social Services*, 121 F.R.D. 22 (W.D.N.Y.1988) for the proposition that § 422 does not create a "privilege" within the meaning of Rule 26(b)(1). In that case, however, the court determined that it "need not reach the issue whether § 422 was intended to create an evidentiary privilege under state law," because the provisions of the statute permitted disclosure in the circumstances. By contrast, in this case, the statute commands that the records in question be expunged, and therefore be available to no one.

It is true, as stated in *Van Emrik*, 121 F.R.D. at 25 and in *Martin v. Lamb*, 122 F.R.D. 143, 146 (W.D.N.Y.1988), that a court must discern from the state enactment in question whether a simple confidentiality provision was intended or a true privilege within the meaning of Rule 26(b)(1). Although it may be, as suggested in *Van Emrik*, that § 422(4) is a confidentiality provision only as it respects existing child abuse records maintained by the statewide Central Register and local DSS offices, in this case, however, maintenance of the records are governed by § 422(9), and those provisions unequivocally direct expungement. The statute thus involves something beyond a "privilege" because it contemplates physical destruction and, by virtue thereof, no possible use can be made of the records.

In *K. v. K.*, 126 Misc.2d 624, 626, 483 N.Y.S.2d 602 (Sup.Ct.N.Y.Co.1984), the court held that records ordered expunged pursuant to N.Y. Social Services Law § 422 may not be the subject of discovery.

Significantly, the Legislature provided that unfounded reports of child abuse be *expunged*, not sealed. The two words are not synonymous. "The word 'expunge' is described as a term expressive of cancellation or deletion, implying not a legal act, but a physical annihilation." (35 CJS Expunge, at 343). On the other hand, when a record is sealed it is merely segregated to ensure its confidentiality to the extent specified in the controlling statute.

\*   \*   \*   \*   \*   \*

Therefore, since the records now sought are considered to have been destroyed,

they are no longer available to the parties for their use in the instant action. Nor may the defendant father attempt to recreate the records by deposing the Society's investigator, inasmuch as that would constitute an impermissible circumvention of the express purpose of the statute. *K. v. K.*, 126 Misc.2d at 626–627, 483 N.Y.S.2d 602 (emphasis in original). As the New York Court of Appeals has stated in regard to juvenile delinquency proceeding records which have been ordered expunged pursuant to the court's inherent powers, "the very existence of such records, despite provisions for confidentiality," will thwart the protective purpose of the statute and "maintenance of [such] a record ..., even a nominally sealed record, can serve no legitimate societal purpose, and may have unfortunate and undeserved consequences for the future of the individual concerned." *Matter of Dorothy D.*, 49 N.Y.2d 212, 215, 216, 424 N.Y.S.2d 890, 400 N.E.2d 1342 (1980) (adding the court was "unpersuaded that such 'information' could have any legitimate use to ... anyone ... because it is entirely without probative value").[4]

Given this unmistakably categorical treatment of "expunged" records under New York law, *compare Alonzo M. v. New York City Department of Probation*, 72 N.Y.2d 662, 536 N.Y.S.2d 26, 532 N.E.2d 1254 (1988) (treatment of "sealed" records), a federal court should have no hesitancy in concluding that expunged matter is privileged in a diversity action within the meaning of Fed.R.Civ.P. 26(b)(1). In so concluding, the court is mindful that privileges should be narrowly construed. *Application of American Tobacco Company*, 880 F.2d at 1527. But any other interpretation would render the privilege determination in this case on the basis of something other than the plain intent of the New York legislature and authoritative interpretations of expungement law by the New York courts. Suppression is therefore appropriate. The file "is entirely without probative value," *Matter of Dorothy D.*, 49 N.Y.2d at 216, 424 N.Y.S.2d 890, 400 N.E.2d 1342. This suppression remedy extends to any effort by defense counsel to "resurrect" the file by calling witnesses to the investigation. *K. v. K.*, 126 Misc.2d at 627, 483 N.Y.S.2d 602. Use of the material in question cannot have any purpose other than to annoy, embarrass, or oppress the plaintiffs within the meaning of Fed.R. Civ.P. 26(c), and its procurement came as a direct result of its violation of the notice requirements of Fed.R.Civ.P. 45(d)(1). On the other hand, this suppression order does not extend beyond the material ordered expunged by the state Administrative Law Judge. Any independently derived material may be inquired into. *Cf. Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

■ Without deciding whether disqualification of counsel is contemplated as a permissible protective device under Fed.R. Civ.P. 26(c), disqualification of defense counsel is not required under any conceivable standard, in the circumstances of this case. As egregious as the failure to provide notice of a third party subpoena is—it is doubtless true that defense counsel understood the highly sensitive nature of the documents he was requesting and that plaintiffs would undertake every effort to resist disclosure by means of a Rule 26(c) motion—it cannot be stated with certainty that defense counsel knew of the peculiar juxtaposition of circumstances which included an expungement order and the continued existence of the files. Indeed, he cannot be held to have anticipated that the County's procedures for handling such subpoenas would completely break down,

---

4. For this same reason, defendant's waiver argument must be rejected. Although federal courts consider that a litigant waives certain privileges by placing in issue a question involving privileged matter, *see e.g., Greater Newburyport Clamshell Alliance v. Public Service Company of New Hampshire*, 838 F.2d 13, 17–19 (1st Cir. 1988), New York courts consider that expunged material is not subject to waiver analysis because the material in question is deemed to be no longer in existence. *Matter of Dorothy D.*, 49 N.Y.2d at 216, 424 N.Y.S.2d 890, 400 N.E.2d 1342 (expunged records have no "legitimate use to the Family Court or anyone else in the event of a future proceeding because it is entirely without probative value"); *K. v. K.*, 126 Misc.2d at 626–27, 483 N.Y.S.2d 602. In any event, it is defendant which interjected the entrustment defense, not plaintiffs.

thereby giving him direct access to files that, if no expungement order had been issued, would remain covered by a statutory cloak of confidentiality. As the County Attorney has informed, DSS usually seeks a judicial order prior to affording access to child abuse records. Although not bound by the standards of disqualification in *Matter of Beiny (Weinberg)*, 129 A.D.2d 126, 517 N.Y.S.2d 474 (1st Dept. 1987) even if disqualification is a permissible remedy under Rule 26(c), it should simply be noted that the record in this case contains no evidence of the egregious and calculated misconduct present in that case. Finally, there is no reason to suspect that the district court cannot adequately police a suppression order in the circumstances of this case after an adversary presentation on the subject.

## CONCLUSION

The motion for a protective order, including suppression, is granted. The motion for disqualification of defense counsel is denied.

SO ORDERED.