UNITED STATES of America,
Petitioner,

v.

NEW YORK STATE DEPARTMENT
OF TAXATION AND FINANCE,
Respondent.

Misc. No. 3014.

United States District Court,
N.D. New York.

Dec. 4, 1992.

Gary L. Sharpe, U.S. Atty., Syracuse, NY (William H. Pease, Asst. U.S. Atty., of counsel).

Stephen J. Segreto, Stuart M. Gerson, Attys., Civil Div., U.S. Dept. of Justice, Washington, DC.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, NY (Lawrence L. Doolittle, Asst. Atty. Gen., of counsel).

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

This matter comes before the court today on a return of an order to show cause as to why the respondent, New York State Department of Taxation and Finance ("State"), should not be compelled to comply with an administrative subpoena *duces tecum* issued pursuant to 5 U.S.C.App. 3 § 6(a)(4) (West Supp.1992) by the United States Department of Labor's Office of Inspector General. This court has jurisdiction over the dispute pursuant to 28 U.S.C. § 1345 (1988) (proceeding involving the United States).

## I. BACKGROUND

In 1978, in an effort to control the rising tide of inefficiency and abuse in federal programs, Congress enacted the Inspector General Act of 1978 ("Act"). The Act established Offices of Inspector General in fifteen federal agencies, including the Department of Labor. The Offices were created to lead each agency's efforts in promoting efficiency and purging waste and fraud from their programs. *See* Act, Pub.L. No. 95–452, § 2, 92 Stat. 1101, 1101 (1978). To accomplish these goals, the Act requires Inspector Generals to conduct audits of, and investigations into, agency programs. *Id.* § 4(a)(1).

Congress gave the Inspector Generals sweeping investigative powers to perform their functions. Most notably (at least for purposes of this proceeding), Congress gave the Inspector Generals authority to issue administrative subpoenas for the production "of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of their functions...." 5 U.S.C.App. 3 § 6(a)(4). Sig-

nificantly, the Act places few restrictions on the Inspector Generals' subpoena power. The only substantive restriction relates to subpoenas issued to other federal agencies; after adding that limitation, Congress left the Inspector Generals' remaining subpoena power essentially unfettered.

Pursuant to its authority under the Act, the Department of Labor's Office of Inspector General ("OIG") investigates activities related to, *inter alia*, the Department's Job Training Partnership Act ("JTPA"). The OIG is currently conducting an audit to determine whether various JTPA participants have satisfied the JTPA's training and assistance requirements. *See* Campbell Decl. (10/7/92) ¶ 4. As part of its audit, the OIG has subpoenaed from the State wage records of approximately 150 JTPA participants. *See* Petition (11/5/92) exh. "2" (subpoena, including list of 150 JTPA participants). The OIG has specifically requested records showing: (1) the names and addresses of the participants' respective employers; (2) the employers' ID numbers; (3) the participants' earnings; and (4) the participants' hours worked. According to the OIG's Regional Inspector, the records sought would assist the OIG in determining whether the information contained in the participants' JTPA files is accurate. Campbell Decl. (10/7/92) ¶ 6.

The Regional Inspector attests that she has requested this information from the State because "[t]he wage records maintained by New York State are the most reliable and, in some instances, the only independent sources of verification." *Id.* The OIG's efforts have been hampered, however, by the State's refusal to produce the subpoenaed documents. The State bases its refusal upon Fed.R.Evid. 501 and N.Y.Tax L. § 697(e)(1) (McKinney 1987), which, the State contends, considered together erect an absolute privilege to disclosure of the subpoenaed records. After unsuccessfully negotiating for the disclosure of the records, the OIG commenced this proceeding pursuant to the Act, 5

U.S.C.App. 3 § 6(a)(4) to compel production.[1]

## II. DISCUSSION

### A. State's argument against compliance

As previewed above, the State's refusal to disclose the subpoenaed records is based upon its construction of the interplay of two statutes: Fed.R.Evid. 501 and N.Y.Tax L. § 697(e)(1). Thus, this discussion begins with a brief examination of those two statutes.

The State first argues that Rule 501 ("Privileges"), a federal law, dictates that the OIG's subpoena power is subject to state law governing privileges. The portion of Rule 501 upon which the State relies specifically states:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of the decision, the privilege of a witness, person, government, state or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501.[2] Construing Rule 501 as a mandate that privileges set forth in state law limit the OIG's investigative authority, the State invokes the privilege set forth in N.Y.Tax L. § 697(e)(1) in an effort to avoid the subpoena. Section 697(e)(1) states, in pertinent part:

> Except in accordance with proper judicial order or as otherwise provided by law, it shall be unlawful for the tax commission ... to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report or return required under this

chapter or under section one hundred seventy-one-a of this chapter.

As the parties are well aware, today is not the first time that this court has reviewed the state's argument. In December, 1990, the court considered—and flatly rejected—these same arguments in nearly the identical context. *See United States v. New York State Dep't of Taxation and Finance*, Misc. No. 2628 (N.D.N.Y.).[3] At the time, the State similarly argued that Tax Law section 697(e)(1) creates a privilege that prevents the OIG from receiving tax and wage records. This court dismissed the State's argument based upon the text of the statute, noting that section 697(e)(1) is subject to the limitation, "[e]xcept in accordance with proper judicial order or as otherwise provided by law ...". In light of this limitation, the court concluded that the nondisclosure prohibition is not applicable when the State acts in accordance with a proper judicial order. Tr. at 6 (citing *In re New York State Sales Tax Records*, 382 F.Supp. 1205, 1206 (W.D.N.Y. 1974)). Thus, once this court issued a "proper judicial order" pursuant to the section 6(a)(4) of the Act compelling the State to produce the wage records, the State could no longer rely upon section 697(e) to refuse compliance.

The law has not changed in the two years since this court issued its last order. Still, the State once again challenges the subpoena and this court's power to compel compliance. The only difference between the instant proceeding and the 1990 proceeding is that the State has bolstered its arguments in opposition to the subpoena. The State contends that this court erred in issuing its 1990 order and asks the court to reconsider its reasoning behind compelling compliance.[4] The State's argument is

---

**1.** The relevant portion of 5 U.S.C.App. 3 § 6(a)(4) states that "subpoena[s], in the case of contumacy or refusal to obey, shall be enforceable by order of an appropriate United States district court."

**2.** Rule 501 contains another substantive provision, as well, which provides that "the privilege of a witness, persons, government, State, or political subdivision thereof shall be governed by the principles of the common law...." Since this portion relates only to common law privileges, and the privilege invoked by the State

here is grounded in state statutory law, the State does not rely upon this provision here.

**3.** The OIG has provided a transcript of the December 11, 1990 proceeding in which the court announced its decision. *See* Petition (11/5/92) exh. "2". For ease of reference, that transcript will hereinafter be referred to as "Tr."

**4.** The court's 1990 order compelling disclosure was not appealable. *See In re Grand Jury Subpoena for New York State Income Tax Records,*

grounded primarily in a 1978 decision by the New York State Court of Appeals, *New York State Dep't of Taxation and Finance v. New York State Dep't of Law*, 44 N.Y.2d 575, 406 N.Y.S.2d 747, 378 N.E.2d 110 (Ct.App.1978), in which that Court narrowly construed the exceptions to section 697(e)(1). The Court of Appeals limited the phrase "proper judicial order" to mean only those judicial orders which "[effectuate] the enumerated exceptions within the statute or which [arise] out of a case in which the report itself is at issue, as in a forgery or perjury prosecution." *Id.* at 582, 406 N.Y.S.2d 747, 378 N.E.2d 110. By all accounts, the OIG's investigation relates to JTPA requirements and thus does not further an exception under the statute or otherwise relate to a tax prosecution. Therefore, argues the State, the "proper judicial order" exception upon which this court relied in 1990 does not apply, and section 697(e)(1) remains as a viable barrier to the State's production of the subpoenaed records.

### B. Preemption

Even if this court accepts, as it must, the New York Court of Appeals's construction of section 697(e)(1), *see, e.g., Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153, 154 (9th Cir.1992); *Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992), that statute still does not excuse the State from complying with the subpoena. This is because the State's expansive interpretation of section 697(e)(1) causes that statute to conflict with the Act's equally expansive subpoena provision, § 6(a)(4). Such a conflict between state and federal law immediately gives rise to the specter of preemption. For the reasons discussed below, this court finds that, notwithstanding the State's interpretation of its Tax Law, that statute is preempted by—and thus must give way to—the OIG's subpoena power as authorized by the Act.

Under the Constitution's Supremacy Clause, state laws that "interfere with, or

607 F.2d 566 (2d Cir.1979). Thus, the State was

are contrary to the laws of congress" are invalid. U.S. Const. art. VI, cl. 2. There are numerous means by which a federal law may preempt a state law, even when Congress does not specifically express its intent to preempt state laws in a given field. Most notably, in the absence of explicit Congressional direction, the doctrine operates to preempt those state law which "conflict with" federal law. Such a conflict occurs when " 'compliance with both federal and state regulations is a physical impossibility,' or when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Wisconsin Pub. Intervenor v. Mortier*, —— U.S. ——, ——, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991) (citations omitted) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)); (*Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941)); *accord, e.g., Cable Television Ass'n v. Finneran*, 954 F.2d 91, 98 (2d Cir.1992).

Under this standard, determination of whether a state law conflicts with a federal law turns upon the purposes and objectives of Congress. *Id.; Environmental Encapsulating Corp. v. New York*, 855 F.2d 48, 53 (2d Cir.1988). If, after examining Congress's purposes and objectives in enacting a law, the court finds that the state law obstructs fulfillment of those goals, then the federal law preempts the state law and the state law will be of no effect. *E.g. Environmental Encapsulating Corp.*, 855 F.2d at 59 (citing *Pacific Gas and Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n*, 461 U.S. 190, 216 n. 28, 103 S.Ct. 1713, 1728 n. 28, 75 L.Ed.2d 752 (1983)); *see Motor Vehicle Mfrs. Ass'n v. Abrams*, 899 F.2d 1315, 1318 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991). *See generally* Jose L. Fernandez, *The Purpose Test: Shield State Environmental Statutes from the Sword of Preemption*, 41 Syracuse L.Rev. 1201 (1990). Thus, in order to determine whether the Act preempts operation of section 697(e) in this case, the court must turn

forced to comply with the order.

its inquiry to discerning Congress's purposes and objectives in enacting the Act, with specific attention given to the Act's subpoena provision.

As discussed above, Congress's intent in promulgating the Act, and giving the OIG such broad investigatory and subpoena powers, was to facilitate detection of waste, fraud, and abuse in federal programs. *See* Act, Pub.L. No. 95–452, § 2, 92 Stat. 1101, 1101. In construing the Act, at least two Courts of Appeals have noted that "[t]he enactment reflected congressional concern that fraud, waste and abuse in United States agencies and federally funded programs were 'reaching epidemic proportions.'" *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 165 (3d Cir.1986) (quoting S.Rep. No. 1071, 95th Cong., 2d Sess. 4 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2676, 2679); *accord, United States v. Aero Mayflower Transit Co.*, 831 F.2d 1142, 1145 (D.C.Cir.1987). When it promulgated the Act, Congress took the extra measure to articulate its belief that the subpoena provision, section 6(a)(4), is an integral component, critical to fulfilling the Act's objectives:

> *Subpoena power is absolutely essential to the discharge of the Inspector and Auditor General's functions.* There are literally thousands of institutions in the country which are somehow involved in the receipt of funds from Federal programs. *Without the power necessary to conduct a comprehensive audit of these entities, the Inspector and Auditor General could have no serious impact on the way federal funds are expended.*

S.Rep. 1071, 95th Cong., 2d Sess. 34, *reprinted in* 1978 U.S.C.C.A.N. 2676, 2709 (emphasis added).

It is undisputed that the OIG seeks to use its subpoena power here in furtherance of its audit into waste and abuse in the JTPA, a federally funded program. *See* Campbell Decl. (10/7/92) ¶¶ 4, 6. By invoking the provisions of Tax Law § 697(e)(1), the State has constructed an insurmountable barrier to the OIG's ability to fulfill that objective. Given that the OIG's stated objective mirrors that articulated by Congress in promulgating the Act, the court can comfortably conclude that the State's invocation of Tax Law § 697(e)(1) "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Cf. Wisconsin Pub. Intervenor*, —— U.S. at ——, 111 S.Ct. at 2482, *Cable Television Ass'n*, 954 F.2d at 98. Stated more succinctly, since the State's reliance upon state law to avoid the federal subpoena renders "compliance with both federal and state regulations ... a physical impossibility," *Florida Lime & Avocado Growers, Inc.*, 373 U.S. at 142–43, 83 S.Ct. at 1217, the state law, at least for purposes of this proceeding, is preempted by the federal Act. Therefore, the State cannot rely upon N.Y.Tax L. § 697(e)(1) to avoid compliance with the subpoena.

The State presents several arguments as to why the Act should not preempt section 697(e). Throughout its opposition, the State urges the court to follow the analytical framework set forth by the First Circuit in *In re Hampers*, 651 F.2d 19 (1st Cir.1981), in reviewing this motion. In *Hampers*, Massachusetts officials successfully relied upon a state confidentiality statute that is notably similar to section 697(e) to block a federal grand jury's subpoena of tax records. In reviewing the privilege claims in each case, the First Circuit utilized a balancing test, weighing the state's interest in confidentiality and candor in reporting against the federal interest in disclosure. From this balancing, the court concluded that the state interest prevailed and could thus withstand the grand jury's subpoena. *Hampers*, 651 F.2d at 23. *But see In re Grand Jury Subpoena for New York State Income Tax Records* ("*Grand Jury Subpoena*"), 468 F.Supp. 575 (N.D.N.Y.1979).[5] The State urges that

---

5. In *Grand Jury Subpoena*, in furtherance of an investigation into organized crime, a grand jury empaneled in this district subpoenaed from the State various tax and wage records related to its investigation. The State moved to quash the subpoena on grounds that compliance would contravene section 697(e)(1) of the Tax Law, the same law at issue in the present matter. *Id.* at 576.

balancing test used in *Hampers* be applied here to yield the same result, *i.e.* that the state need not disclose the tax records.

In this court's view, the approach utilized in *Hampers* is inappropriate in cases such as the present, in which a state's conflict with a Congressional mandate is so absolute. Unlike *Hampers*, this case presents a situation in which Congress has clearly announced the federal government's objective and prescribed specific means, the OIG's broad subpoena power, by which that objective must be fulfilled. Whereas in *Hampers* the court addressed a federal grand jury's interest—not Congress's interest—in reviewing various documents as part of a criminal investigation, here this court is faced with a clear Congressional mandate which the State seeks to inhibit. Since section 697(e) so clearly conflicts with the Congressional objective in promulgating the Act, such that "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc.*, 373 U.S. at 142–43, 83 S.Ct. at 1217, Supreme Court precedent unambiguously dictates that the statute is preempted by the Act. Therefore, given the clear and dominating Congressional mandate underlying this case, the court declines to become entangled in a *Hampers*-type balancing.

 The State also argues that section 697(e)(1) does not conflict with federal law because Fed.R.Evid. 501 (quoted *supra* p. 239), a federal law, directs that federal courts must respect state substantive laws governing privileges. A careful reading of Rule 501 shows that this argument is without merit. As a preliminary matter, the State has not convinced the court that section 697(e)(1) provides for a "privilege" within the meaning of that Rule. Rather, that statute speaks only in terms of confi-

dentiality of records. Statutory guarantees of confidentiality, however, do not necessarily translate into evidentiary privileges within the meaning of Rule 501. *Cf. Van Emrik v. Chemung Cty. Dep't of Social Servs.*, 121 F.R.D. 22, 25 (W.D.N.Y. 1988).

In *Van Emrik*, the Western District addressed an issue related to the instant question, in which a party sought to invoke N.Y.Soc.Serv.L. § 422, a confidentiality statute, as a privilege in civil rights litigation brought pursuant to 42 U.S.C. § 1983. While finding alternative grounds to reject reliance upon § 422, *see Van Emrik*, 121 F.R.D. at 26, the court expressed its concern over whether the § 422 confidentiality provision constitutes a "privilege" cognizable under Rule 501. The court explained, "[m]erely asserting that a state statute declares that the records in question are 'confidential' does not make out a sufficient claim that the records are 'privileged' within the meaning of ... Fed.R.Evid. 501." *Van Emrik*, 121 F.R.D. at 25 (citations omitted).

This court shares the Western District's concern. While section 697(e) of the Tax Law surely mandates confidentiality, that mandate does not perforce create an evidentiary privilege—a wholly different concept—for Rule 501 purposes. This court, like the court in *Van Emrik*, need not resolve that issue today. Instead, for purposes of this discussion, the court may give the State the benefit of the doubt and treat section 697(e)(1) as a "privilege" within the meaning of Rule 501. *See* 121 F.R.D. at 25–26. Even assuming, without deciding, that section 697(e) constitutes an evidentiary privilege, that privilege is nonetheless not saved in this case by Rule 501.

---

Judge Munson rejected the State's arguments, finding that section 697(e)(1) is preempted by the Fifth Amendment and two federal statutes governing grand jury "powers and duties," 18 U.S.C. §§ 3332, 3333. *Id.* at 577 & n. 1. While Judge Munson considered the salutary purposes behind section 697(e)—to ensure personal privacy and to encourage truthful tax reporting—he did so only to show that the federal and state interests were not totally conflicting. It is none-

theless clear from his ruling, and from subsequent rulings by the Supreme Court and Second Circuit, that the State cannot rely upon a state statute to obstruct a federally-mandated activity, regardless of how commendable the State's objectives might be. *See id.* at 577; *see also Wisconsin Pub. Intervenor,* —— U.S. at ——, 111 S.Ct. at 2482; *Florida Lime & Avocado Growers, Inc.*, 373 U.S. at 142–43, 83 S.Ct. at 1217; *Cable Television Ass'n,* 954 F.2d at 98.

Rule 501 contains a qualification that is fatal to the State's case. The qualification, "with respect to an element of a claim or defense *as to which State law supplies the rule of the decision,*" limits application of Rule 501 to cases that are governed by state law. In cases in which federal law will provide the rules upon which the case will be decided, privilege founded in state law does not control. *E.g. von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.1987); *In re Pebsworth*, 705 F.2d 261, 262 (7th Cir.1983). In other words, a party may invoke state-based privileges under Rule 501 only when state law will "supply the rule of the decision."

In the instant proceeding, the Department of Labor's OIG is conducting a federal audit into waste and abuse in the federal JTPA. The audit is being conducted pursuant to a Congressional mandate that the OIG purge federal programs of inefficiency and abuse. *See* S.Rep. No. 1071, 95th Cong., 2d Sess. 4 (1978), 1978 U.S.C.C.A.N. 2679; Campbell Decl. (10/7/92) ¶¶ 4, 6. Nothing in the investigation signifies that state law issue will provide the rule of decision in the audit or any subsequent, related proceeding. In short, the State has supplied no justification for its reliance upon that portion of Rule 501 which allows the court to consider state-based privileges in reviewing a subpoena.

Section § 697(e) of the New York Tax Law irreconcilably conflicts with the OIG's Congressionally-mandated duties and authority under the Act. Since it obstructs fulfillment of Congress's purposes and objectives under the Act, section 697(e) is preempted by the Act and the State cannot rely upon it to block the OIG's subpoena of records. The State is not saved by Fed. R.Evid. 501, since that Rule recognizes state privileges only when state law will provide the rule of decision, a condition which is not present here. Since the State's opposition to the OIG's subpoena is without merit and the State has provided no other basis for refusing to comply with the subpoena, the OIG's motion to compel compliance with the subpoena is granted.

## III. CONCLUSION

Petitioner United States's petition for enforcement of its subpoena is granted. The respondent New York State Department of Taxation and Finance is hereby ordered to comply with the United States's subpoena, dated March 24, 1992, within sixty (60) days of this order, unless the parties mutually agree upon an alternative schedule.

IT IS SO ORDERED.